# HERBERT EVERETT MOSLEY, JR. v.
# STATE OF MARYLAND

[No. 668, September Term, 1979.]

*Decided March 5, 1980.*

The cause was argued before MORTON, MELVIN and LISS, JJ.

*Victoria A. Salner, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Kathleen M. Sweeney, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Irma S. Raker, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

On April 3, 1979, Herbert Everett Mosley, Jr., the appellant, was convicted by a jury in the Circuit Court for Montgomery County (Cave, J.), of armed robbery, use of a handgun and carrying a handgun. On May 28, 1979, he was committed to the custody of the Division of Correction for a ten-year term for the armed robbery, a five-year term for the use of a handgun and a one-year term for the carrying of a handgun. Five years of the ten-year robbery sentence was suspended and all sentences were set concurrent to each other. On appeal the appellant contends that the court erred in denying his motion to suppress certain evidence that was the result of a search and seizure and that it erred in not rehearing his suppression motion prior to trial.

The record before us shows that about 6:00 P.M. on Friday, November 24, 1978, when Loretta Lane parked her car outside her residence, she was accosted by two young men, one of whom was carrying a handgun. They robbed her of her briefcase and twenty dollars cash before fleeing. She called the police. At about 1:00 A.M. the following morning, the police requested her to come to the station where she identified and recovered her property. At trial she identified the appellant as one of the two persons who had robbed her.

On March 9, 1979, a hearing was held in the Circuit Court for Montgomery County (Latham, J.), on the appellant's motion to suppress certain evidence. The appellant maintained that Detective Daniel Worthman illegally stopped and detained him; that the illegal stop led to an illegal search and seizure, and that the illegal seizure, the recently stolen wallet of Loretta Lane, in turn led to his arrest, confession and conviction. Judge Latham ruled that the stop was permissible and that the appellant gave his consent to the search and seizure.

Immediately prior to trial on April 12, 1979, in the Circuit Court for Montgomery County (Cave, J.), the appellant requested the court to grant a new suppression hearing. The court refused to do so and permitted Judge Latham's ruling to

stand. Appellant now contends that his motion to suppress was improperly denied because:

(a) Judge Latham erred in not finding the stop was illegal;

(b) Judge Latham erred in finding that the appellant consented to the search.

Detective Worthman of the Takoma Park Police explained that he was an expert in the area of crime prevention and his job was to roam around "high crime areas" dressed in old undistinguished mufti looking for suspicious activity. At about 7:00 P.M. on November 24, 1978, in an unmarked car, he passed the Langley Shopping Center and saw two young men "standing in front of the Kress Store." He explained that "they were looking up and down the parking lot and looking in the Kress Store towards the area where there [were] cash registers." Knowing this was in a high crime area, Worthman became suspicious. He said:

> I pulled my vehicle around and parked in the parking lot around several other cars to conceal my vehicle and that was approximately seventy to a hundred feet away and I observed the individuals continually pace back and forth in front of the Kress, continually looking inside, continually looking out into the parking lot. On several occasions one would lean against the pole on the outside of the doors and watch the inside area near where the cash registers were. at while one of the individuals would walk around the cash registers, pause and look at the candy bars —
>
> After they went in and out of the store about once or twice each and they continued to walk back and forth for a few minutes — this went on for about fifteen minutes. I then observed the two individuals proceed to a yellow Pontiac with Virginia registration that was parked in the parking lot in an unusual manner.

* * *

As I observed the individuals walk it was approximately a hundred and fifty to two hundred feet away from the Kress Store and enter this vehicle that was parked in that manner. They turned around and slowly started riding back down the shopping center in a kind of slow manner. At that point I stopped the vehicle.

When the car stopped, Worthman said he approached the driver, who was the appellant, and asked for his driver's license and car registration. He then radioed a request to his headquarters to verify the appellant's identification. While he was waiting for the reply, he walked back to the appellant's car. By this time the appellant was standing outside his car but his companion was still seated in the front seat on the passenger's side. Worthman's testimony then went on:

Q. Corporal, tell us what if anything was said or if nothing was said, what if anything you observed.

A. Well, I advised the driver of the car, Mr. Mosley, that this area had been a high area of armed robberies and that I'd like to look in his vehicle as I had observed on the back floorboard behind the passenger side a large leather bag that reminded me of a pocketbook and since there was no women in the car I asked him if I could look at it.

Q. All right. What if anything did he say when you said that to him?

A. He said he didn't care if I looked at it.

Q. So after he said that, what happened next?

A. Well, I reached in. I got the bag. I pulled it out and discovered that it was a briefcase. I then pulled out a wallet and I started —

Q. Where did you pull the wallet from?

A. From within the briefcase and I then started looking through the identification and noticed that it belonged to a black female, I believe in her thirties, who lived in Silver Spring. I then asked Mr. Mosley who the items belonged to and he said it

> belongs to his cousin. And I then asked him how old his cousin was since I noticed the I.D. showed that she was considerably older than what he would be, around his age group, and he said he didn't know.
>
> I then asked him what his cousin's name was and he also said he didn't know.

Worthman instructed the appellant to get back in his vehicle. Worthman again radioed to his headquarters to find out if a Lane had recently been involved in a crime.

A few minutes later two police cruisers arrived. They told Worthman that Lane had, just within the hour, been robbed by two men. The appellant and his juvenile companion were immediately arrested. The car was thoroughly searched. A derringer handgun, found hidden in the back seat, was seized. After being advised of his *Miranda* rights the appellant admitted that he had robbed Lane.

The appellant testified to a different version of events. He explained that there were two attractive young girls in the Kress Store and that he, and his companion, had been merely looking at the girls. He specifically denied that he gave Detective Worthman permission to inspect the briefcase. He said Worthman had opened the case and seized the wallet over his objections.

As we perceive this case, there are really only two issues. The first is whether the stop, under the authority of *Terry v. Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), was permissible. The other is whether the consent exception authorized by the Supreme Court in *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973), is applicable.

In *Terry v. Ohio, supra,* the Supreme Court held that the police may "stop" a person, without violating the person's Fourth Amendment right against unreasonable search and seizures, and detain him briefly for questioning upon suspicion that he may be connected with criminal activity. The key to the stop is whether the officer had reasonable "suspicion" to justify the stop. Six variables have been suggested as

means of determining whether a reasonable suspicion exists.[1] These include:

1. The appearance of the detainee
2. Conduct
3. Criminal record
4. Environment
5. Police purpose
6. Source of information

Variables one and three are not applicable in the instant case but elements of the other four are present. Conduct encompasses activity taking place both immediately before the stop and immediately following the stop. If suspicious conduct occurs in either instance, an officer may initiate a forcible investigative stop.

In the instant case Worthman observed the appellant for about fifteen minutes. He saw the appellant and his companion walking around and looking in a store with no apparent intent to make any purchase. He then observed the appellant backing his car up to the front of the store and parking it in a position to facilitate a quick get-away. These observations were sufficient to justify a reasonable suspicion that a robbery was being planned.

The place of the stop further supports Worthman's suspicion. He testified that he knew many crimes had been committed in the area within the preceding few weeks including two armed robberies within two blocks of the Kress Store. Thus the environment further supports his suspicion in this case.

The purpose of the stop was to prevent a potentially violent crime and was not prompted by any other ulterior motives. Since the *Terry* holding involves a balancing of the need to stop against the Fourth Amendment guarantee of privacy, it suggests that the articulable facts necessary to satisfy the *Terry* test should decrease as the severity of the investigated crime increases. The purpose variable in this case indicates

1. Van Sicklen, "Terry Revisited: Critical Update on Recent Stop and Frisk Developments," Wisconsin Law Review 877 (1977).

that only minimum suspicion would be required to justify the stop.

The remaining variable concerns the source of information. Since the source was Worthman's own observations, it was highly reliable. Considering these variables, we have no difficulty in concluding that Worthman had a reasonable suspicion sufficient to justify a stop and temporary detention.

The trial court found that the facts and circumstances as related by the police officer met the criteria stated in *Terry v. Ohio, supra,* and justified a reasonable stop. There is no distinction to be made between the reasonable stop of an individual and a vehicle in which he is either a driver or occupant. *Williams v. State,* 19 Md. App. 204, 210, 310 A.2d 593 (1973). Assuming the officer is able to enunciate facts which justify an articulable suspicion based on specific actions, together with the rational inferences properly drawn therefrom, which warranted a reasonable suspicion on the part of the officer that a crime was being committed, was about to be committed or had been committed, then under *Terry v. Ohio, supra,* the vehicle is subject to a reasonable investigatory stop. In this case, appellant and his companions having aroused the officer's suspicions by their odd and unusual behavior which was consistent with the activity of "casing" the store preparatory to an effort to rob the persons in the store, may not escape the ambit of *Terry* by entering their vehicle as a shield against the officer's justifiable action in effecting a reasonable stop of the vehicle.

This case is distinguishable on the facts from the cases of *Delaware v. Prouse,* 440 U.S. 648, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979), and *Goode v. State,* 41 Md. App. 623, 398 A.2d 801 (1979), which appellant cites in support of his position. In each of these cases, the stopping officer was unable to give *any* articulable facts which would have justified the interposition of the law as stated in *Terry. See also, United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S. Ct. 2574, 45 L. Ed. 2d 607 (1975).

In *Adams v. Williams,* 407 U.S. 143, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972), the Supreme Court had before it a case in which the issue was whether a police officer, on the basis of

the facts recited at trial, had the right under *Terry v. Ohio, supra,* to make a reasonable investigatory stop of a motor vehicle operated by the defendant. In confirming the right of the officer to make such a reasonable stop, Justice Rehnquist, speaking for a majority of the Court, said:

> In *Terry* this Court recognized that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Id.,* at 22, 20 L.Ed.2d at 906. The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response.
>
> *See id.,* at 23, 20 L.Ed.2d at 907. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. [Citations omitted.] [407 U.S., at 145-46.]

We conclude that the officer's actions in stopping the motor vehicle in this case was appropriate and justifiable in the light of the factual situation as he related it at trial.

In ruling on Worthman's seizure of the briefcase, Judge Latham held:

> In connection with the search I don't have any problem with that, that he asked Mr. Mosley, and Mr. Mosley for reasons that he hasn't expressed to me here today I feel consented to the search. I don't have any problem about this and certainly having consented to it it wasn't an improper search and there would be no reason to suppress the evidence

that was found as a result of that search and certainly after having received the information of the armed robbery that had taken place an hour or so before this and finding the fruits of that armed robbery in the back seat of the Mosely vehicle he was — they were justified in arresting these two men and then including a search of the car.

The question of whether a valid consent was given depends upon a determination of the credibility of the witnesses. Worthman said consent was given and the appellant said it was not. In *Jones v. State,* 13 Md. App. 309, 312-13, 283 A.2d 184 (1971), we said:

> The Fourth Amendment to the Constitution of the United States does not prohibit all searches. Its protection is afforded against "unreasonable searches and seizures" and a search and seizure is not unreasonable if grounded upon valid consent. However, when as here, a consensual search is effected, the courts must look to the circumstances surrounding the search in order to ascertain the validity *vel non* of the consent. The reasonableness of any search depends upon the facts and circumstances of each case. [Citations omitted.]

In the instant case, the court made a specific finding of fact that it believed Worthman and that evidence is sufficient to support the court's conclusion. We find no error in the court's upholding the search of the briefcase on theory of the consent exception to the warrantless search rule. *Schneckloth v. Bustamonte, supra; State v. Wilson,* 279 Md. 189, 367 A.2d 1223 (1977).

Having found Judge Latham's ruling that the stop was legal, and that the search and seizure of the wallet was also proper, the appellant's objection to the court's refusal to rehear his motion immediately before trial becomes moot.

*Judgments affirmed.*
*Costs to be paid by appellant.*