## McCRAY *v.* STATE

[No. 413, September Term, 1963.]

*Decided July 15, 1964.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT and HORNEY, JJ. and RUTLEDGE, J., Associate Judge of the Fourth Judicial Circuit, specially assigned.

*Raymond M. Faby,* with whom were *Rollins, Smalkin, Weston and Andrew,* on the brief, for the appellant.

*Fred Oken, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, William J. O'Donnell* and *Frank Cannizzaro, Jr., State's Attorney* and *Assistant State's Attorney,* respectively, *for Baltimore City,* on the brief, for the appellee.

HORNEY, J., delivered the opinion of the Court. BRUNE, C. J., dissents.

The questions presented on this appeal relate to the admissibility of evidence seized during the course of a search and to the sufficiency of the evidence to support the convictions of being a rogue and vagabond, of attempting to break and enter a storehouse with intent to steal, and of receiving stolen property.

On October 28, 1963, a confectionery store on Woodbrook Avenue in Baltimore City was burglarized. A rear door was forced open and an electric hand saw and other property valued at more than $600 were stolen.

Shortly after midnight (about 12:30 a.m.) three days later, a police officer, in the course of "trying up" his post in the area of the burglarized store, apprehended the defendant (Milton McCray, Jr.) coming out of the rear yard of the store. The yard was enclosed by a high concrete wall, the entrance to

which was through a door that was customarily kept locked. Upon seeing the defendant in the doorway, the arresting officer also entered the yard with him and observed that an attempt had been made to break into the store again through its rear door. Lying in the yard outside the back door (in which a glass panel had been broken) the officer saw a monkey wrench and bolt cutters. When the officer first saw him, the defendant was wearing gloves, but when he finally emerged from the yard, the gloves had been discarded. They were found in the yard later. The defendant denied knowing anything about the tools.

After arresting the defendant and incarcerating him, the officer and a police sergeant went to the home of the defendant's parents. They were met at the door by the father, who, upon being informed of their purpose, invited them in, and, according to the police, gave them permission to search the premises. After explaining that his son stayed there only occasionally, he conducted them to the sun parlor where the son slept when he was there. He declined, however, to sign a written authorization to make the search, saying that his wife would do so and went to call her.

While the husband was upstairs, the police, in making a search of the sun parlor, found an electric hand saw (later identified as the one which was taken from the confectionery store on October 28) under a cot. When the wife appeared, she also refused to sign the authorization. Thereupon the search was discontinued and the police left the premises. Later, when the defendant was confronted with the saw at the station house, he claimed that he had won it in a crap game a few days before from a person he knew only by sight. He was also unable to identify any of the other participants in the game.

At the trial, when the arresting officer was asked about the search on direct examination, the defendant objected on the ground that permission to search had not been given, but the objection was overruled and the officer was allowed to testify in detail as to the search and seizure. The police sergeant also testified as to the grant of permission and the ensuing search of the sun parlor. When the State offered the saw as an exhibit, the defendant did not object and it was admitted as evidence. Photographs showing the results of ransacking the store

on the prior occasion and of the tools lying where they were found after the attempted second burglary, were also introduced in evidence without objection. When the State rested, the defendant moved for a directed verdict of acquittal, but the motion was denied.

The father and mother, in testifying for the defendant, denied that the search leading to the seizure of the saw was permissive. In so doing, the father stated that he refused to consent to a search unless his wife would come downstairs and consent to it. He further testified that he went upstairs to get his wife and that by the time she came down the police had already searched the sun parlor and living room. He added that upon her arrival, the police produced a slip of paper and asked her to sign it, but she refused to do so. On cross-examination, the father admitted that the police had asked for permission to come in and that he had granted it. He disclaimed having any knowledge that the saw was in the house and stated that he had never seen it before.

Testifying on his own behalf, the defendant stated that he was walking home after a date with his girl friend when he was arrested. He categorically denied being in the back yard of the store or coming out of it. He further denied attempting to break into the store and that he was ever in the store at any time. He admitted, however, that he had an extensive criminal record, including several convictions for breaking and entering.

On appeal, the defendant, besides asserting that the saw should not have been admitted as evidence, also contends that he should not have been convicted of being a rogue and vagabond, of attempting to break and enter a storehouse with intent to steal, and of receiving stolen property.

### (i)

The most important contention relates to the admissibility of the saw, which, the defendant contends, should have been excluded as evidence because the search for and seizure of it was made without a warrant and without permission.

As we read the record, there is some doubt as to whether the question was properly reserved for appellate review. Although the defendant made a timely objection to the propriety of per-

mitting the police officer to testify with respect to the search and seizure on the ground that consent to make the search had not been given, he did not object to the admissibility of the saw as evidence when it was offered as an exhibit at the conclusion of the officers' testimony. However, since the parties treated the question as properly raised, we shall assume that it was, and decide it.

This case was tried by the lower court without a jury, and we cannot say that the trial court erred in allowing the saw to be introduced into evidence as the product of a legal search and seizure. Although the defendant contends that no invitation was extended to the police to search the premises (especially the sun parlor where the defendant slept occasionally), the record shows that there was ample evidence, if believed, to justify the trial court finding that the search was permissive and therefore legal. *Armwood v. State,* 229 Md. 565, 185 A. 2d 357 (1962). Both of the investigating officers testified that the father of the defendant, having been informed of the reason for their visit, not only invited them in, but consented to a search and conducted them to the sun parlor. As an owner and co-occupant of the house, the father was entitled to give such consent and to bind his son in so doing. *Bellam v. State,* 233 Md. 368, 196 A. 2d 891 (1964). Although the father denied having given permission to conduct the search, the trial court chose to disbelieve him and to believe the police officers. As the credibility of witnesses is primarily a matter for the trial court to decide, its decision that the search was permissive will not be disturbed absent proof that the court's action was clearly erroneous. *Spencer v. State,* 235 Md. 129, 200 A. 2d 643 (1964). It appears that what the police did was not unlawful since a search by permission is one of the exceptions to the general rule that reasonable searches must be made under a valid search warrant. See *Gross v. State,* 235 Md. 429, 201 A. 2d 808 (1964).

(ii)

The contention of the defendant that he should not have been convicted of being a rogue and vagabond under Code (1957), Art. 27, § 490, because there was no evidence that he was in possession of any of the "burglar tools" described in the stat-

ute, nor any evidence of his being apprehended in an enclosed yard, is clearly without merit.

For this Court to reverse a judgment entered in a case tried by the lower court without a jury, it must be shown that there was no legally sufficient evidence, or proper inferences therefrom, from which the court could find the accused guilty beyond a reasonable doubt. *Bailey v. State,* 226 Md. 353, 173 A. 2d 732 (1961). That was not the situation here. A review of the evidence reveals that the circumstances were such as to warrant the trial court finding, as it did, that the defendant had possession of a monkey wrench and bolt cutters inside the enclosure of the rear yard with intent to feloniously break and enter the confectionery store. See *Wright v. State,* 222 Md. 242, 159 A. 2d 636 (1960) ; *Bevans v. State,* 180 Md. 443, 24 A. 2d 792 (1942). While it is true that a monkey wrench and bolt cutters are not specifically listed in the statute, it is apparent they could be used to break and enter and therefore came within the statutory term of "other implement[s]." See *Martin v. State,* 203 Md. 66, 74, 98 A. 2d 8 (1953).

(iii)

The contention of the defendant that he should not have been convicted of attempting to break and enter the store and steal money or other valuable personal property, because there was no proof of the value of such goods and chattels as were on the premises, also lacks substance.

Recently, we had occasion to say in *Putnam v. State,* 234 Md. 537, 200 A. 2d 59 (1964), that the amount of value of what is intended to be stolen is often a matter of inference. We think the evidence in the instant case was sufficient to support an inference that the goods in the store on October 31, 1963, had some monetary value. There was evidence that the store had been partially looted of merchandise valued in excess of $600 three nights before the attempted breaking, and that the defendant had in his possession at the time of his apprehension an electric hand saw that was a part of the merchandise stolen in the October 28th burglary. These facts were sufficient to support the inferences that there was some merchandise of value in the store and that the defendant intended to

steal all that he could. See *McLaughlin v. State*, 234 Md. 555, 200 A. 2d 46 (1964).

(iv)

Lastly, the defendant contends that he should not have been convicted of receiving stolen property, because there was no proof that he was in possession of the saw knowing it to have been stolen. This is likewise without substantial merit. Of the four elements necessary to constitute the crime of receiving stolen property (see *Jordan v. State*, 219 Md. 36, 148 A. 2d 292, 1959), only the element concerning guilty knowledge is contested by the defendant.

It is settled law that the unexplained possession of recently stolen property is evidence of guilt of larceny. *Debinski v. State*, 194 Md. 355, 71 A. 2d 460 (1950). It is also generally held that possession of stolen property by one charged with unlawfully receiving it, although not sufficient to show guilty knowledge, is a strong circumstance to be considered with all the other evidence of guilty knowledge. *Jordan v. State, supra*, at p. 48 of 219 Md. It is not necessary, however, that guilty knowledge be direct or actual, and such knowledge may be found in a rational inference deduced from circumstantial evidence when such proof indicates that the receiver knew or could reasonably have suspected that the property in his possession was stolen. *Weddle v. State*, 228 Md. 98, 178 A. 2d 882 (1962) ; *Bell v. State*, 220 Md. 75, 150 A. 2d 908 (1959).

In the instant case, where the defendant had an extensive criminal record and gave an implausible explanation concerning his possession of the saw, the trial court was not obliged to believe that the defendant was not the burglar. *Berry v. State*, 202 Md. 62, 95 A. 2d 319 (1953). Yet, in applying the doctrine recognized in *Jordan v. State, supra,* and *Brown v. State*, 232 Md. 162, 192 A. 2d 110 (1963), the court gave the defendant the benefit of any doubt it may have had as to his breaking and entering the store on October 28, and with regard to that offense, found him guilty of the lesser charge of receiving stolen property. We think it is apparent that there was sufficient evidence to convict the defendant of receiving stolen property.

*Judgments affirmed.*

BRUNE, C. J., dissents.