JETHER MARYLAND JONES, III *v.* STATE OF MARYLAND

[No. 59, September Term, 1971.]

*Decided November 8, 1971.*

310

The cause was argued before ORTH, POWERS and GIL-BERT, JJ.

*Gerald Adler* for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Thomas Howard, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

In August of 1970, Mrs. Dorothy Jones [Mrs. Jones], the mother of the appellant, Jether Maryland Jones, III, [appellant], went to the Northern District Police Station and requested that appellant be arrested for violation of the narcotic laws. A warrant was obtained for appellant's arrest and Mrs. Jones, the lessee of the house in which she, appellant, age 20, and her two daughters resided, gave permission to the police to search her home. The appellant slept in the small bedroom on the second floor front of the house. He paid neither room nor board. Mrs. Jones stated that she would go into her son's room "to wake him up or something like that, but not to stay in." She did not clean his room. When Officer Charles Tinker, Officer Weber and another policeman went to Mrs. Jones'

home, accompanied by her, she opened the door. The appellant was in the living room of the house. He was informed of the warrant for his arrest for possession of narcotic paraphernalia and placed under arrest. The police officers then commenced a search of the house. Appellant offered no objection to the search. In the bedroom used by appellant, "* * * on top of the bed was some of this paraphernalia right in plain view as you go down the hallway." Officer Tinker observed a can of lactose, which he testified is used "to mix with heroin." In the room the police recovered the lactose, "312 glassine bags, nylons, one strainer, two pieces of nylons, and two playing cards and eight brown bags." The appellant, testifying in his own behalf, said that, "I did have them in my possession, a bag, but its contents, I didn't, you know, because I didn't go into the bag. I was holding the bag for a friend of mine." He identified the friend to the court. "When they [the police officers] was telling me about the other paraphernalia, I had no idea what he was talking about until he mentioned the bag, and then I got to thinking back to the bag * * *." Appellant said the bag just "set" in the foyer and later in the basement. "* * * two or three days prior to my arrest, I move the bag * * * and just put it on my top bunk bed." The room that appellant occupied was equipped with bunk beds. He acknowledged he was a user of drugs and stated he applied for assistance from the Maryland Drug Abuse Authority shortly before his arrest. He was, however, arrested before he was able to avail himself of the Authority's services. He acknowledged that he had had the bag in his possession, containing all the paraphernalia, for seven or eight months, but he said he never looked inside it.

Following his conviction in the Criminal Court of Baltimore before Judge Charles D. Harris, in a bench trial, on a charge of possession of narcotic paraphernalia, appellant received a four year sentence. Later the term was reduced to three years, eight months, so as to reflect credit for the time spent in confinement prior to trial.

Appellant mounts a three-pronged attack on the judgment of the Criminal Court of Baltimore. He says:

1. The warrantless search of his room was unconstitutional; hence the fruits obtained from that search are inadmissible.

2. There was no legally sufficient evidence to sustain the conviction.

3. The statute under which he was convicted [Article 27, § 287 (d)] is unconstitutionally ambiguous in prohibiting the possession of certain common articles.

## I

The appellant argues firstly that the search of his room was unconstitutional. Of course, if the search fails on constitutional grounds, the evidence derived from that search would likewise fail. Appellant states, "The officers in this case having made their arrest then proceeded to search, not only the area in which the appellant was arrested, but the entire house." This act, he says, violates the doctrine set forth in *Chimel v. California*, 395 U. S. 752, 89 S. Ct. 2034, 23 L. Ed. 685 (1969). *Chimel* provides:

> "Arrest does not justify routinely searching any rooms other than that in which the arrest occurs, or searching through desk drawers or other closed or concealed areas in the room itself."

Additionally, he relies upon *Reeves v. Warden, The Maryland Penitentiary*, 346 F. 2d 915 (1965). Neither is controlling here. In *Chimel*, there was an objection to the police officers "looking around," and in *Reeves* permission to search the premises rented by the sister of Reeves was given by Reeves' mother who was, like Reeves, a guest in the sister's home. *Here, Mrs. Jones, the lessee of the entire house, gave permission to the officers to search her home.* She testified that she gave the permission and it is not disputed that she did so.

The Fourth Amendment to the Constitution of the United States does not prohibit all searches. Its protec-

tion is afforded against "unreasonable searches and seizures" and a search and seizure is not unreasonable if grounded upon valid consent. However, when as here, a consensual search is effected, the courts must look to the circumstances surrounding the search in order to ascertain the validity *vel non* of the consent. The reasonableness of any search depends upon the facts and circumstances of each case. *Maxwell v. Stephens*, 229 F. Supp. 205, 210 (1964) ; *United States v. Rabinowitz*, 339 U. S. 56, 70 S. Ct. 430, 94 L. Ed. 653.

> "The search of the petitioner's room by the police officers was conducted without a warrant of any kind, and it therefore 'can survive constitutional inhibition only upon a showing that the surrounding facts brought it within one of the exceptions to the rule that a search must rest upon a search warrant.'" *Stoner v. California*, 376 U. S. 483, 84 S. Ct. 889, 11 L. Ed. 2d 856 (1964).

It is argued that appellant's mother could not validly authorize the search of her son's room. However, there is authority that a parent may consent to a search of a child's living quarters if the child is living at home. *Maxwell v. Stephens, supra; McCray v. State*, 236 Md. 9, 202 A. 2d 320 (1964) ; *Rees v. Peyton*, 341 F. 2d 859 (1965) ; *Commonwealth v. McKenna*, 202 Pa. Super. 360, 195 A. 2d 817 (1963) ; *United States ex rel. McKenna v. Myers*, 232 F. Supp. 65 (1964). See also the cases collected in 31 A.L.R.2d 1081-1083.

In *United States ex rel. Puntari v. Maroney*, 220 F. Supp. 801, 806 (1963), it is stated:

> "The immunity from unreasonable searches and seizures being personal, an accused cannot object to the searching of another's premises, particularly that of his parents, if the latter consent to the search." 31 A.L.R.2d 1081.

Cases holding contrary to the general rule usually turn

on a factual finding that there was no real consent because of the parents' ignorance of their constitutional protection, or because they were coerced into allowing the search, *United States v. Roberts,* 179 F. Supp. 478 (1959),[1] or the person authorizing a search has lacked the authority to do so. *Reeves v. Warden, supra.*

There is no contention in the instant case that the consent of Mrs. Jones was other than freely, intelligently, specifically and unequivocally given.

In *McCray v. State, supra,* McCray's father, after being informed of the purpose for the police officers' visit to his home, granted permission to the officers to search the premises. He explained to the police that his son only stayed there occasionally and "conducted them to the sun parlor where the son slept when he was there." In response to a challenge to the search, the Court of Appeals said:

> "As an owner and co-occupant of the house, the father was entitled to give such consent and to bind his son in so doing. * * * It appears that what the police did was not unlawful since a search by permission is one of the exceptions to the general rule that reasonable searches must be made under a valid search warrant. * * *."

The Supreme Court of Minnesota in *State v. Kindernan,* 271 Minn. 405, 136 N.W.2d 577 (1965) had before it a case wherein a father who owned a house gave consent to a search of the bedroom used by his 22 year old son. In response to an attack on the search, the Court said:

> "But in this case the consent was given by the father who did not wish to have property on his premises which did not belong there, and who joined with law enforcement officers in de-

---

1. There it was held that the record was devoid of "clear and positive testimony" showing "a consent that is 'unequivocal and specific', 'freely and intelligently given.' "

termining if such a fact were true. We can agree that the father's 'house' may also be that of the child, but if a man's house is still his castle in which his rights are superior to the state, those rights should also be superior to the rights of children who live in his house. We cannot agree that a child, whether he be dependent or emancipated, (defendant was 22 years of age at the time of his arrest) has the same constitutional rights of privacy in the family home which he might have in a rented hotel room. In considering the reasonableness of a search of a home when the search is consented to by the father, the protection afforded to the child must be viewed in light of the father's right to waive it." Certiorari denied. 384 U. S. 909, 86 S. Ct. 1349, 16 L. Ed. 2d 361.

Appellant's mother had the sole control, power and superior right to exclude others, including the appellant, from her home, and also from the very bedroom that the appellant used. It was her free and voluntary choice to allow the police to search her house. *Maxwell v. Stephens, supra, State v. Kinderman, supra.*

Under the circumstances of this case—a minor child living at home, not paying room and board, and interposing no objection to his mother's authorization of a search of the bedroom utilized by him—we hold the search was not unreasonable.

Since no objection was offered by appellant to the search, we do not in this opinion reach the question as to the validity *vel non* of the search had he interposed an objection.

Judge Harris properly denied appellant's motion to suppress the evidence.

## II

Secondly, appellant argues that the evidence was legally insufficient to convict. He contends that his explanation of possession, coupled with his cavalier method of

storing the paraphernalia, should create a reasonable doubt as to his intentions.

> "The test of the sufficiency of the evidence in a case tried before the court without a jury is whether the evidence, if believed, either shows directly or supports a rational inference of the facts to be proved, from which the court could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged." *Coward v. State,* 10 Md. App. 127 (1970).

The judgment of the lower court in a non-jury case will not be set aside on the evidence unless clearly erroneous. Rule 1086. An examination of the record fails to reveal that Judge Harris was erroneous at all, much less clearly erroneous. He was not required to believe the appellant's explanations. See *Rice v. State,* 9 Md. App. 552 (1970); *Munger v. State,* 7 Md. App. 710 (1969); *Wilson v. State,* 7 Md. App. 41 (1969), and *Ball v. State,* 7 Md. App. 219 (1969). The evidence was legally sufficient to sustain the conviction.

### III

Lastly, the appellant contends that the statute under which he was convicted [Art. 27, § 287 (d)] is unconstitutionally vague. This question of the possible ambiguity of the statute was not raised or decided below, and is not properly before us. Maryland Rule 1085.

In *Vuitch v. State,* 10 Md. App. 389, 398 (1970), we held:

> "Of course, nothing is better settled than the rule that a question as to the constitutionality of a statute will not be considered on appeal when not properly raised and decided by the lower court. *Luthardt v. State,* 6 Md. App. 251; *Iozzi v. State,* 5 Md. App. 415; *Woodell v. State,* 2 Md. App. 433."

*Judgment affirmed.*