501 A.2d 865

**Donald Everett WADDELL**

v.

**STATE of Maryland.**

**No. 463, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Dec. 16, 1985.

Nancy Cook, Assigned Public Defender of Washington, D.C. (Alan H. Murrell, Public Defender on brief, Baltimore), for appellant.

Valerie W. Loftin, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Baltimore) (Joseph I. Cassilly, State's Atty. for Harford County and Edward Lilly, Asst. State's Atty. for Harford County, Bel Air, on brief), for appellee.

Argued Before MOYLAN, KARWACKI, and BELL, (ROBERT M.), JJ.

KARWACKI, Judge.

Shawana Blackburn was last seen alive in the early evening hours of June 27, 1984. She was found dead in her AMC Concord automobile the following day—the victim of a brutal assault. Blackburn had been a waitress at a bowling alley owned by a Mr. and Mrs. Klein. The Kleins also owned a nearby grocery store in which they employed Donald Waddell, the appellant, as a clerk in the produce section. Blackburn, who knew the appellant from work, had given the appellant a ride in her Concord. Where the two were going is not clear from the record, but apparently the appellant was angry with some of the things that Blackburn had been telling people about his honesty—references that were made by Blackburn regarding a previous illegal drug transaction between the two. Not far from where this journey began, Blackburn was killed. Her death resulted from a fractured skull, strangulation, and a razor inflicted "large gaping wound" on the side of her neck.

The appellant was convicted by a jury in the Circuit Court for Harford County (CLOSE, J. presiding) of the first degree murder of Blackburn and was sentenced to life imprisonment. In his appeal from that conviction he raises seven issues. As we respond to his arguments, we will supplement the facts of the case as needed.

The appellant contends:

1. the trial court erred in admitting the portion of the appellant's statement that related to his prior drug dealings with the victim;

2. the trial court erred in allowing the jury to view the crime scene, and it erred in following the route that the State alleged the perpetrator of the crime had taken;

3. the appellant was denied a fair trial by virtue of the jury having discussed the case among themselves prior to the close of the case;

4. the trial court erred in denying the appellant's request for additional jury instructions;

5. the trial court erred in denying the appellant's motion to suppress articles seized in a search of the appellant's home—a search to which the appellant's parents, who owned the home, consented;

6. the appellant's statement should not have been admitted into evidence as it was the product of coercive tactics; and

7. the evidence was insufficient to support a finding that the appellant was the perpetrator of the crime.

### 1. Prior Drug Dealings with the Victim

On June 28, 1984, the day that the victim's body was discovered, the appellant voluntarily agreed to answer police questions at the Harford County Sheriff's Department in Bel Air, Maryland. Two times during the questioning, the appellant made reference to his having had prior drug dealings with the victim.

Prior to trial, the appellant filed a motion to suppress the statements. A hearing was held, and the motion was denied. At trial, the appellant objected to the statements' being admitted into evidence, and the objection was overruled.

While it is true that evidence of crimes which are independent of those for which an accused is on trial are generally inadmissible, *Ross v. State*, 276 Md. 664, 350 A.2d 680

(1976), it is also true that evidence of other crimes is admissible when the evidence is substantially relevant for some other purpose than to show that the accused committed the crime on trial because of his criminal character. *Tichnell v. State*, 287 Md. 695, 711, 415 A.2d 830 (1980). There are generally five categories within which such evidence of other crimes is admissible. Such evidence will be admitted if it tends to establish motive, intent, absence of mistake, a common plan or scheme, or the identity of the person on trial charged with the commission of a crime. *Tichnell*, 287 Md. at 711–12, 415 A.2d 830.

In this case, the appellant's statements were properly admitted as tending to show both a motive for the commission of the crime on trial, and the identity of the person charged with that crime. One of the appellant's statements disclosed that the appellant and the victim had argued about a previous drug transaction. This was the State's only evidence regarding the appellant's motive for committing murder. Likewise, the statements also tended to show the identity of the appellant because they were probative on the issue of why the appellant was in the victim's car on the day of the murder. There was ample reason to admit the appellant's statements, and we perceive no abuse of discretion by the trial judge in their admission.

### 2. View of the Crime Scene

■ The process of having the trier of fact go and look at an object or place which is either impractical or impossible to bring to the courtroom is known as a "view." 4 Wigmore, *Evidence* § 1162 (Chadbourn rev. 1972). The view has been recognized as a proper trial tool since the beginnings of trial by jury. 4 Wigmore, *supra*. A trial court is empowered to order a view as a "consequence of its ordinary common law function." 4 Wigmore, *supra*, § 1163.

The appellant maintains that it was error for the trial court to allow the jury to view the crime scene. The judge had ordered a view of the scene and of the route taken by the perpetrator after receiving a request from the jury that

they be allowed to see the scene. Several days prior to the close of the evidence, the jury had requested a view of the scene to "enable the members of the jury to better understand the witnesses' testimony." The court did not respond to the question until the close of all the evidence on the final day of trial. The court waited until descriptions of the scene and of the routes, including aerial photographs, had been entered into evidence. Despite this evidence, the jury still expressed a desire to view the area. The court received no objections at that time from either the appellant or the State, and scheduled a view for the next morning, before the closing arguments of both sides.

On the morning of the view, the appellant did register an objection. He argued that a view by the jury would be prejudicial to his case because the jury would infer from the route to be taken to and from the scene of the crime that the appellant himself traveled that route. The appellant believed that the testimony and exhibits already in evidence sufficed to inform the jury as to the crime scene and the surrounding roads.

The court ruled that a view would be conducted because the testimony with regard to the various roads leading to and from the crime scene was confusing. It is settled that Maryland follows "the general rule, accepted both in this country and in England, that the granting or refusing of a request to allow the jury to view the premises where a crime is alleged to have been committed is within the discretion of the trial court." *Corens v. State*, 185 Md. 561, 573, 45 A.2d 340 (1946); *Hutchinson v. State*, 36 Md.App. 58, 65–66, 373 A.2d 50, *cert. denied*, 281 Md. 739 (1977). The ruling of the trial court will not be disturbed absent a clear showing of an abuse of such discretion. We find no abuse of discretion here.

A view should not be conducted unless the trial court is reasonably certain that it will aid the trier of fact in reaching its verdict, and it is impracticable or inefficient to present the elements to them by maps, photos, or diagrams.

*See generally* 75 Am.Jur.2d, Trial § 74 (1974). In this case, the trial court was careful to make sure that the jury had a chance to hear testimony regarding the crime scene and the roads leading to and from the scene, before responding to the jury's request to view the crime scene. Only after the court learned from the jury that there was still confusion on their part regarding the site did it allow a view.

Furthermore, the appellant was not prejudiced by the method of conducting the view. While on the view, the jury was not allowed to ask any questions. The record reflects that the jury was driven by bus along the various roads that had been the subject of testimony, and that a Deputy Sheriff who accompanied them simply pointed out to the jurors the names of the various roads and pointed out the houses of the various witnesses who had testified at trial.

After the jury returned to the courthouse, the trial judge began his instructions to the jury. The court began by telling them that it allowed the view to clarify for the jury where the houses and roads that had been the subject of testimony were located. The court then instructed the jury that it was not to infer that the routes to and from the scene were necessarily taken by the perpetrator of the crime, and that the jury was to base its verdict only on evidence presented in the courtroom. The court's directions on conducting the view and its subsequent instructions with regard thereto were prudent and proper.

### 3. Jury Discussion of the Case

█ During the course of the trial, the jury on numerous occasions passed notes with questions or requests to the judge. On each occasion, these notes were read aloud to both counsel and the appellant, and appropriate responses to the jury were discussed. The appellant contends that these notes showed that the jury was discussing the case among themselves, and that the appellant was denied a fair trial by virtue of those discussions.

The short answer to the appellant's argument is that he has failed to preserve the point for our review. Md.Rule

1085. The appellant was aware of the basis for the objection throughout the trial, and he failed to make any objection.

### 4. Jury Instructions

Following the court's instructions to the jury, the appellant objected that the court had not adequately explained presumption of innocence and reasonable doubt, and that the court had not instructed properly as to identity and not at all as to alibi.

A trial judge is obliged to instruct the jury on every essential point of law supported by the evidence when requested to do so by either side. *Tripp v. State,* 36 Md.App. 459, 463, 374 A.2d 384, *cert. denied,* 281 Md. 745 (1977); Md.Rule 4–325(c). A trial judge may refuse to give requested instructions, however, where there is no evidence to support them. *Bellamy v. State,* 50 Md.App. 65, 70, 435 A.2d 821 (1981), *cert. denied,* 292 Md. 376 (1982).

■ In this case, the trial judge properly refused to give an alibi instruction as the record did not disclose that an alibi issue had been generated by the evidence. The only testimony cited by the appellant which resembles a claim of alibi is the following exchange between the appellant and his counsel:

Q. Why did you go see Mr. Klein?

A. On the 27th or 28th? What day are you talking about?

Q. I believe she testified on the 27th of June, 1984, at approximately 4:00 p.m. she saw you at the courtesy desk.

A. No, I wasn't up there at 4:00 p.m.

Q. Where were you?

A. I was home. I was between home and on my way to the bowling alley.

It is the appellant's argument that he was either home or on his way home at the time of the murder. The State presented its theory of when the murder occurred, and

supported it with the testimony of witnesses who had seen the victim and/or her car on the day of the crime. But, it was the State's theory that the murder occurred between 5:30 and 6:00 p.m. The appellant did not sufficiently raise an alibi defense by placing himself relatively close to the crime scene one and one half to two hours *before* the crime occurred. *Brooks v. State*, 53 Md.App. 285, 452 A.2d 1285, *cert. denied*, 295 Md. 529 (1982); *Dillon v. State*, 27 Md. App. 579, 585, 342 A.2d 677 (1975), *aff'd*, 277 Md. 571, 357 A.2d 360 (1976). The trial court properly refused to instruct on the defense of alibi.

■ The appellant also complains that the instructions given regarding the presumption of innocence and reasonable doubt were insufficient, and those regarding identity were misleading. We do not agree.

The court instructed the jury on the issues of innocence and reasonable doubt as follows:

> The burden of proof in this case, as in all criminal cases, rests upon the State. Here the State has a different and greater burden than does the Plaintiff in a civil case. In the latter, the Plaintiff must prove his case by a preponderance of evidence. In a criminal case, the State must prove every element of a crime charged beyond a reasonable doubt and to a moral certainty.
>
> Now the jury must not assume that the accused is guilty merely because he is being prosecuted and because criminal charges have been preferred against him. He comes into court presumed to be innocent, and this status remains with him throughout the trial.
>
> The plea of not guilty is all the denial of the commission of the crime that a Defendant need make. The State has the burden of proving him to be guilty by evidence which produces an abiding conviction of guilt in the minds of the jury beyond a reasonable doubt and to a moral certainty. Now this does not mean that the State has the burden of proving to a mathematical certainty that he is guilty, and that there's no other possibility beyond the evidence than

that of guilt. If the evidence is of such a character as to persuade the jury of the truth of the charges with the same force that would be sufficient to persuade a member of the jury to act on that conviction of truth in his own important business affairs, or important affairs in his own life or career, then the jury may conclude the State has met the burden of proof beyond a reasonable doubt and to a moral certainty.

We find the court's instructions on these issues to have been adequate. "[I]t is not necessary that the court give a requested instruction if the matter is fairly covered in the instruction actually given and the jury was not misled on the subject." *Brooks v. State,* 53 Md.App. at 293, 452 A.2d 1285 (quoting *Tipton v. State,* 39 Md.App. 578, 586, 387 A.2d 628, *cert. denied,* 283 Md. 739 (1978)). Further, the court had explained the State's burden of proof in other parts of its instructions. Of course, the instructions must be read as a whole and portions of the instructions should not be read out of context. *State v. Grady,* 276 Md. 178, 185, 345 A.2d 436 (1975).

█ The appellant's argument that the instructions on the issue of identity were inadequate is meritless. The trial judge instructed:

You are further instructed that the burden is on the State to prove beyond a reasonable doubt not only that the offense was committed, but also the the [sic] Defendant is the person who committed it. Whether or not the witnesses have identified the Defendant as the perpetrator of the crime is a question solely for you to decide.

These instructions did advise the jury of the quantum of proof necessary to establish identity, and we perceive no error.

### 5. Third Party Consent to a Search of the Appellant's Room

█ The police searched the appellant's room on June 28, 1984, and seized certain personal property belonging to the appellant. At the time of the search the appellant was not

home, but his parents, with whom he lived, were there. Having no search warrant, the police sought and obtained written consent for the search from the appellant's mother.[1] Prior to obtaining the mother's consent for the search, the police learned that the appellant rented a bedroom from his parents for $20 per week, and that the mother had access to the room at all times—the appellant's mother used the clothes closet in that room.

The appellant maintains that the search was illegal because his mother had no authority to consent to a search, and that therefore, all the articles seized by the police should have been excluded from evidence. (The police had seized from the appellant's bedroom his sunglasses, a pipe, and the contents of an ashtray, and from the basement of the house, the police seized two pairs of pants—one pair of bluejeans and one pair of green work pants—and a pair of work boots. There is no dispute that the appellant's mother had authority to consent to a search of the basement of her home).

A police search of one's property, undertaken with the consent of one who had dominion over the property, is a well recognized exception to the Fourth Amendment's warrant requirement. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The search may be conducted with no more than the consent of the proper party, even if there is both time and opportunity to obtain a warrant. *U.S. v. Carter,* 569 F.2d 801 (4th Cir.1977), *cert. denied,* 435 U.S. 973, 98 S.Ct. 1618, 56 L.Ed.2d 66 (1978).

This Court has recently stated that "[p]remises may be searched without a warrant when voluntary consent to search the premises is given." *McDonald v. State,* 61

---

1. The appellant's mother signed a "Consent to Search" form. The form authorized the police to search her entire home and to take any property that they desired to use in connection with the investigation being conducted.

Md.App. 461, 470, 487 A.2d 306 (1985) (citing *U.S. v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974)). In the instant case, the appellant's mother, who had authority to enter the appellant's room, expressly consented to a police search of the room. The issue presented by the appellant is answered in *U.S. v. Matlock, supra*, where police obtained consent to search the respondent Matlock's room from a woman who jointly occupied the room with Matlock. The Court stated that the consent given was legally sufficient to warrant admitting into evidence the fruits of the search. *Matlock*, 415 U.S. at 177–78, 94 S.Ct. at 996, 39 L.Ed.2d at 253 (1974). Justice White, for the Court, stated that permission from a third party with common authority over the premises to be searched may constitute voluntary consent sufficient to validate a search. *Matlock*, 415 U.S. at 171, 94 S.Ct. at 993, 39 L.Ed.2d at 249–50. He further explained that "common authority" rests "on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Matlock*, 415 U.S. at 172 n. 7, 94 S.Ct. at 993 n. 7, 39 L.Ed.2d at 250 n. 7.

Here, it is undisputed that Mrs. Waddell had the authority to enter the appellant's room at her convenience. By allowing Mrs. Waddell unrestricted access to his bedroom, the appellant assumed the risk that his mother might permit the room to be searched. Accordingly, we find no error in the trial court's denial of the appellant's motion to suppress the fruits of the search to which she consented.

6. The Admissibility of the Appellant's Statement

After the police had searched the appellant's room, the appellant returned to his house. The police identified themselves, and asked the appellant if he would go with

them to the sheriff's office to answer some questions. He agreed. The appellant now argues for the first time that his statement was not voluntarily given, that the police used coercive tactics to get his statement, and that therefore the statement was improperly admitted.

At trial, the appellant made a motion to suppress the statement given to police on the ground that he had not been given the *Miranda* warnings. He did not, however, object to the admission of his statement on the ground that it was involuntarily given.

In arguing that motion to suppress, the appellant conceded that the portion now being contested as being coerced was voluntarily given. He cannot now argue that it was involuntarily made. Md.Rule 1085; *Von Lusch v. State,* 279 Md. 255, 368 A.2d 468 (1977).

### 7. Sufficiency of the Evidence

■ The appellant's last argument is that the evidence of his participation in the crime was not sufficient to reach the level of proof that is constitutionally required for a conviction. We disagree.

In reviewing a record for the sufficiency of evidence to support a criminal conviction, the standard we apply is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560, 573 (1979); *Johnson v. State,* 303 Md. 487, 510, 495 A.2d 1 (1985). The Court of Appeals in *Tichnell v. State,* 287 Md. 695, 717, 415 A.2d 830 (1980), explicated this standard of review by observing:

> This standard does not require a court to " 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' " (emphasis in original). Instead, the standard to apply is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt." (emphasis in original) [citations omitted].

Our review of the record revealed that the evidence, although circumstantial, was sufficient to support the conviction. "[C]ircumstantial evidence need not be such that no possible theory other than guilt can stand...." *Pressley v. State,* 295 Md. 143, 148, 454 A.2d 347 (1983) (quoting 3 Wharton's, *Criminal Evidence* § 980 at 477 (12th ed. 1955)). The circumstantial evidence must afford the basis for an inference of guilt beyond a reasonable doubt, but it is not necessary that each circumstance, standing alone, be sufficient to establish guilt. *Pressley,* 295 Md. at 149, 454 A.2d 347.

Given the testimony at trial, including that of the appellant, it is clear that "any rational trier of fact" could have concluded that the appellant was guilty of first degree murder. The evidence placed the appellant with the victim shortly before she was murdered. The evidence also showed that the appellant had been upset with the victim, and had been acting in a very irritable manner prior to the time of the killing. Various witnesses testified to seeing a man similar in appearance to the appellant in areas between the murder scene and the appellant's home at times shortly after the murder took place. The person described also was wearing clothing similar to that worn by the appellant that day. One witness even positively identified the appellant as the man he had seen along that route. Further, the razor blade used to viciously slice the victim's neck was determined by FBI analysis to have come from the same box of razors that the appellant had been seen standing next to at his place of employment on the day of the murder.

As the jury made a reasonable inference from the evidence presented at trial, we will not upset their finding.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY THE APPELLANT.