799 A.2d 462

**STATE of Maryland**

v.

**Christopher Lamor MILLER.**

**No. 2077, Sept. Term, 2001.**

Court of Special Appeals of Maryland.

June 4, 2002.

Gary E. Bair, Assistant Attorney General and Edward J. Kelley, Staff Attorney (J. Joseph Curran, Jr., Attorney General, Baltimore, and Jack Johnson, State's Attorney for Prince George's County of Upper Marlboro, on the brief), for appellant.

Richard A. Finci and Judith M. Helfman (Houlon, Berman, Bergman, Cerullo, Finci & Levenstein LLC, on the brief), New Carrollton, for appellee.

Argued Before JAMES R. EYLER, GREENE, and LAWRENCE F. RODOWSKY, (Ret., specially assigned), JJ.

JAMES R. EYLER, J.

Christopher Lamor Miller, appellee, was charged in the Circuit Court for Prince George's County with possession of cocaine, possession of cocaine with intent to distribute, possession of marijuana, possession of marijuana with intent to distribute, and possession of a firearm during and in relation to a drug trafficking crime. Appellee moved to suppress the physical evidence that had been seized by the police, and the court granted the motion. The State noted an appeal to this Court.

Appellee, age 26, resided in his father's home, and the evidence was seized from appellee's bedroom, which was located in the basement. The issue before us is whether the consent to search given by his father was valid. We hold that the consent was valid, and consequently, we shall reverse the circuit court's ruling.

### Evidence at Suppression Hearing

Sergeant Henry Norris testified to the following. At approximately 11:30 p.m. on June 7, 2001, he knocked on the door of 7909 25th Avenue in Adelphi, Maryland, to investigate

a tip of drug activity, specifically, that someone was selling drugs out of the basement of the premises. Sergeant Norris was accompanied by Officer Paul Dougherty. Other officers were in the area, but they did not go to the door. The residence was owned by Rudolph Miller, who lived there with appellee, his son, and Joanna Miller, his daughter. Rudolph Miller answered the door, and the two officers went inside. Rudolph Miller called to Joanna and appellee, who were in their respective rooms, to join them. Appellee was in the basement in his bedroom. According to Sgt. Norris, he read the consent to search form out loud in the presence of all three of them, and Rudolph Miller consented to a search of the entire house, indicating that he disapproved of drugs and wanted any drugs found removed from his home. The officers were interested in searching only the basement. Joanna did not object to the search, but she advised her father not to sign the consent to search form. He refused to sign it. Appellee, according to Sgt. Norris, said "go ahead and check." After other officers entered, went to the basement, and returned with drugs, Joanna became upset and asked the officers to leave. Sgt. Norris testified that Rudolph Miller told her to keep quiet, and he renewed his consent.

Officer Dougherty testified to essentially the same matters as Sgt. Norris except he stated that, after learning from Rudolph Miller that appellee was in the house, it was he who called appellee to come upstairs, and he called more than once. He did not recall whether Sgt. Norris read the consent to search form before or after appellee came upstairs.

Officer Robert Brewer testified that he entered the residence after he had been informed that consent to search had been obtained. As he entered, appellee was coming up the stairs from the basement. Officer Brewer went to the basement, searched appellee's bedroom, and seized various items including marijuana sitting on top of a dresser. He testified that the bedroom door was open.

Rudolph Miller testified that appellee had resided with him since birth, without paying rent. Appellee's bedroom was in

the basement. It had a lock on the door, as did other bedrooms in the house, although the door was generally unlocked. There was a back door entrance to the house which appellee used, at least some of the time. Rudolph Miller also stated that "we can go to the bedroom [appellee's] if we want to." Finally, this witness testified that the officers searched the basement and brought appellee upstairs before they requested consent and before they read the consent form to him. Rudolph Miller denied giving consent.

## Circuit Court's Ruling

The court found that Rudolph Miller had voluntarily consented to a search of appellee's bedroom. The court further found that the State had not met its burden of establishing that appellee had consented to the search. The court then held that, under the factual circumstances presented, consent of Rudolph Miller was not valid, and because he was present in the house, consent of appellee was required.

## Standard of Review

As stated by the Court of Appeals in *In re Tariq A–R–Y*, 347 Md. 484, 488–89, 701 A.2d 691 (1997), the standard of review is as follows.

In reviewing the denial of a motion to suppress, we look only to the record of the suppression hearing and do not consider the evidence admitted at trial. *Gamble v. State,* 318 Md. 120, 125, 567 A.2d 95, 98 (1989); *Herod v. State,* 311 Md. 288, 290, 534 A.2d 362, 363 (1987); *Trusty v. State,* 308 Md. 658, 670, 521 A.2d 749, 755 (1987). We are further limited to considering only that evidence and the inferences therefrom that are most favorable to the prevailing party on the motion, in this instance ... [appellee]. *Riddick v. State,* 319 Md. 180, 183, 571 A.2d 1239, 1240 (1990); *see also Simpler v. State,* 318 Md. 311, 312, 568 A.2d 22, 22 (1990). In considering the evidence presented at the suppression hearing, we extend great deference to the fact-finding of the suppression hearing judge with respect to determining the credibility of witnesses and to weighing and determining

first-level facts. *Riddick*, 319 Md. at 183, 571 A.2d at 1240. When conflicting evidence is presented, we accept the facts as found by the hearing judge unless it is shown that those findings were clearly erroneous. *Id.* As to the ultimate conclusion of whether a search was valid, we must make our own independent constitutional appraisal by applying the law to the facts of the case. *Id.*

## Discussion

The circuit court's finding that Rudolph Miller consented to the search is not challenged on appeal. The circuit court's finding that appellee did not consent to the search is challenged by the State.

The evidence is equivocal as to whether appellee consented, and we shall accept the circuit court's finding. The sole issue, therefore, is whether Rudolph Miller's consent was valid.

The fourth amendment secures the reasonable expectation of privacy.[1] Generally, a warrant is required to search a home. An exception is voluntary consent, *see Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), including under certain circumstances, third party consent. *See Frazier v. Cupp*, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969).

A third-party possessing common authority over or other sufficient relationship to the property sought to be searched may validly consent to a search resulting in the discovery of evidence to be used against another party. *United ed States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). The rationale behind recognizing third-party consent when there is common authority or other suffi-

---

1. The Fourth Amendment to the U.S. Constitution, applicable to the states through the Fourteenth Amendment, provides:

 The right of the people to be secure in their Persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

cient relationship is that, under the particular facts presented, it is reasonable to recognize that one party may consent to the search in "his own right," and the parties assume such risk. *Id.* at 172·n. 7, 94 S.Ct. 988. *See Tariq,* 347 Md. at 492, 701 A.2d 691 (citing 3 W. LaFave, *Search and Seizure* section 8.3(a), at 720 (3rd ed.1996)).

■ Common authority is based on mutual use of the property by persons generally having joint access or control for most purposes. *Matlock,* 415 U.S. at 172 n. 7, 94 S.Ct. 988. · ·The *Matlock* Court explained further:

> Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, *see Chapman v. United States,* 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961) (landlord could not validly consent to the search of a house he had rented to another), *Stoner v. California,* 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964) (night hotel clerk could not validly consent to search of customer's room). . . .

*Id.*

In *Matlock,* a woman who shared a room with the defendant authorized a search that resulted in finding inculpatory evidence to be used against the defendant. The Court held that the woman possessed common authority through joint access or control of the room, and thus, her consent was not unreasonable and the evidence discovered was admissible against the defendant. *Id.* at 171–72, 94 S.Ct. 988.

*Matlock* is controlling in the instant case. The Court, in *Matlock,* expressly focused on the relationship between the consenting third party and the property to be searched. Subsequent to *Matlock,* some courts have limited their focus to that relationship.

> [T]he relevant analysis in third-party consent cases focuses on the relationship between the consenter and the property searched, not the relationship between the consenter and the defendant. While the character of the relationship

between the consenter and the defendant may bear on the nexus between the consenter and the property, it is not dispositive of the issue of effective consent.

*United States v. McAlpine,* 919 F.2d 1461, 1464 (10th Cir. 1990).

In addition to the relationship between the third party and the property and, specifically, the third party's access to or control of the property to be searched and mutual use of the property, other factors have been considered by courts, either in their own right or as relevant to access, control, and use. Most notably, these include the relationship between the third party and the defendant and the third party's concern for safety. *See, e.g., United States v. Robinson,* 999 F.Supp. 155, 159–61 (D.Mass.1998).

Our focus, in the case before us, is whether the State has proven by a preponderance of the evidence that Rudolph Miller had common authority or other sufficient relationship to appellee's bedroom to validate his consent. To the extent relevant, the additional factors mentioned above support the father's authority to consent. There was a familial relationship between appellee and the consenting third party, and the third party expressed a desire to have any drugs removed from his premises.

The parties in the case before us have each relied, in part, on cases from other jurisdictions, state and federal, to support their respective positions. The resolution of the issue of consent always turns on the facts of each case. *Tariq,* 347 Md. at 493, 701 A.2d 691. A review of many of the cases from other jurisdictions leads us to conclude that many are reconcilable on their facts; others are not. When they are not, it is frequently because courts have interpreted differently footnote 7 in *Matlock.* Specifically, courts often disagree on what is meant by "mutual use." *Compare, e.g., United States v. Ladell,* 127 F.3d 622 (7th Cir.1997) (upholding mother's consent to search son's bedroom) *with, e.g., United States v. Whitfield,* 939 F.2d 1071 (D.C.Cir.1991) (invalidating mother's consent to search son's bedroom). For a discussion of state

cases regarding a parent's consent to search a child's bed-room, see George L. Blum, *Admissibility of Evidence Discov-ered in Search of Defendant's Property or Residence Autho-rized by Defendant's Adult Relative Other Than Spouse— State Cases*, 55 A.L.R.5th 125, 206–53 (1998). We have not engaged in an extensive discussion of out-of-state cases in this opinion because we believe prior appellate opinions in this State provide sufficient guidance to determine the issue before us.

Viewing the evidence in a light most favorable to appellee, we assume that appellee was not within hearing distance when his father gave consent. There is no evidence that appellee voiced an objection after his father had consented or during the search. Because the evidence is equivocal with respect to whether appellee had a reasonable opportunity to object prior to commencement of the search, in considering the validity of the consent given, we shall not ascribe any weight to the absence of an objection by appellee. *Cf. Jones v. State*, 13 Md.App. 309, 283 A.2d 184 (1971) (upholding the validity of the parental consent, we considered as one of the relevant facts that the defendant was present during the search and did not object).

██ It is unclear what information the police officers had concerning appellee prior to employing the "knock and talk" procedure and obtaining information from Rudolph Miller. In any event, the mere fact that appellee was on the premises, and presumably became the target of the investigation after the officers were informed that his bedroom was in the basement, did not require the officers to seek appellee's consent instead of his father's consent before entering appel-lee's bedroom. In other words, if his father's consent was valid, the fact that appellee was on the premises did not make it invalid. *See In re Anthony F.*, 293 Md. 146, 151, 442 A.2d 975 (1982).

Prior to *Matlock,* Maryland appellate courts addressed the issue of the validity of consent to search premises given by a parent of a defendant. The Court of Appeals held that the

father of a defendant, based on his status as an owner and co-occupant of the house, was entitled to give consent and bind his son in so doing. *McCray v. State*, 236 Md. 9, 202 A.2d 320 (1964). In *McCray*, the disputed evidence was found in a "sun parlor where the son slept when he was [occasionally] there." *Id.* at 12, 202 A.2d 320. The son's age was not mentioned in the opinion, however, a review of the parties' briefs revealed that he was 25 years old. *McCray v. State*, No. 413, September Term, 1963, Appellant's Brief and Appendix at E.18. In *Jones v. State*, *supra*, the defendant, age 20, resided with his mother and sisters (the age of majority at that time was 21). The defendant's mother consented to a search of the defendant's bedroom. Although the bedroom was used by her son alone, she owned the home and had unrestricted access to his room. The son did not pay rent and did not object to the search. This Court, in upholding the consent, stated: "Appellant's mother had sole control, power and superior right to exclude others, including the appellant from her home, and also from the very bedroom that the appellant used." *Jones*, 13 Md.App. at 315, 283 A.2d 184.

To the extent that the Courts in *McCray* and *Jones* relied on the status of a parent as "owner" of a house, that is not inconsistent with the *Matlock* Court's statement that common authority is not to be implied from a third party's "mere property interest." *Matlock*, 415 U.S. at 172 n. 7, 94 S.Ct. 988. Indeed, in *Tate v. State*, 32 Md.App. 613, 363 A.2d 622 (1976), we discussed the meaning of footnote 7 in *Matlock* as follows:

[I]t is clear, from the authorities cited by the [*Matlock*] Court, that in cautioning against a determination based on property rights alone, the Court had in mind a situation, for example, where title to the premises is vested in one giving consent, but the right of possession is vested in the defendant.

*Tate*, 32 Md.App. at 620, 363 A.2d 622 (holding that the consent of a mother to search her 17–year–old son's bedroom was valid where she possessed ownership, control, and right of possession).

In cases discussing third-party consent, courts have recognized that a parent as an owner, absent evidence to the contrary, has control over and possession of his or her home. The United States Court of Appeals for the Fourth Circuit has recognized that, as head of a household, a parent usually has access to the rooms of family member occupants. *United States v. Block*, 590 F.2d 535, (4th Cir.1978) (upholding mother's consent to search her 23–year–old son's bedroom based on her access to the room for household purposes); *accord Robinson*, 999 F.Supp. at 159 ("Generally, a mother has access to the bedroom of an adult son who still lives at home for usual household activities.").

Parents also have an interest in prohibiting contraband from being used or stored in their home, *see Ladell*, 127 F.3d at 624 (removal of weapons); *United States v. Rith*, 954 F.Supp. 1511, 1515 (D.Utah 1997)(same), and curtailing illegal activity arising therefrom. *See State v. Vidor*, 75 Wash.2d 607, 452 P.2d 961 (Wash.1969); *State v. Kinderman*, 271 Minn. 405, 136 N.W.2d 577 (Minn.1965).

In *McDonald v. State*, 61 Md.App. 461, 487 A.2d 306 (1985), this Court upheld the consent of an 18–year–old to search the house she shared with her sister, mother, and her mother's boyfriend, the defendant. *McDonald*, 61 Md.App. at 471, 487 A.2d 306 (holding that "the adult daughter's status as resident of the house and as a close relative of the owner gave her the authority to consent to a search of her mother's bedroom.").

In *Waddell v. State*, 65 Md.App. 606, 501 A.2d 865 (1985), this Court applied *Matlock* to resolve an emancipated child's challenge to his mother's consent to search his bedroom. Prior to obtaining consent, the police learned that "appellant rented a bedroom from his parents for $20 per week, and that the mother had access to the room at all times—the appellant's mother used the clothes closet in that room." *Waddell*, 65 Md.App. at 616, 501 A.2d 865. The police seized personal property belonging to the defendant. Upholding the validity of the consent and search, this Court held that Mrs. Waddell had authority to enter her son's room at any time, and that he

assumed the risk that she might permit the room to be searched. *Id.* at 617, 501 A.2d 865.

In the most recent Maryland case dealing with parental consent, the Court of Appeals discussed *McCray, Jones, Tate,* and *Waddell. Tariq,* 347 Md. at 493–95, 701 A.2d 691 (recognizing that "Maryland courts have generally held that one who shares with others access to, ownership of, or possessory rights over property necessarily enjoys a diminished expectation of privacy therein."). The Court of Appeals upheld parental consent to search the personal effects of a minor based on the parent's role as the head of household or owner of property and as co-tenant or common resident of jointly occupied property. *Id.* at 493, 701 A.2d 691.

■ Consistent with the reasoning employed in past Maryland cases addressing third-party consent, we hold that the State satisfied its burden of proving that Rudolph Miller had common authority over or a sufficient relationship to appellee's bedroom to validate his consent. The police received a tip that there was drug activity in the basement of 7909 25th Avenue. Rudolph Miller was the owner of the house and father of appellee. Appellee's bedroom was located in the basement. Rudolph Miller consented to the search of his house and told police he wanted any drugs found removed from the premises.

Appellee had resided with his father his entire life and paid no rent. A stairwell leading from the kitchen to the basement connected the first floor to an area near appellee's room. There was no indication that appellee's living quarters were limited to the basement. The bedroom area was not physically separated from the rest of the house, such as one might expect in the case of an apartment rented to non-family members. The interior door to appellee's bedroom generally remained unlocked. Nothing suggested that appellee's use of the property varied from that of an ordinary family member, and there was no indication that Rudolph Miller's authority as father and owner did not extend to the basement.

Appellee's status as an emancipated child is relevant to his relationship with his father and his expectation to privacy. There was no understanding or agreement between appellee and his father with respect to appellee's expectation of privacy. In contrast, Rudolph Miller testified that he and Joanna could enter appellee's bedroom if and when they so desired. We conclude that Rudolph Miller, as owner and head of household, had access to and control over the rooms in his house. There was no evidence to the contrary at the hearing on the motion to suppress; the evidence confirmed such actual authority. Consequently, appellee assumed the risk that his father would consent to a search of his bedroom.

We note there is no issue in this case with respect to the scope of consent. Marijuana was found in plain view on top of appellee's dresser. No issue has been raised as to the location of the other items seized, and appellee makes no assertion that they were within a container or otherwise hidden from view. We need not determine, therefore, whether consent extended to the interior of any container within the room, *e.g.,* the dresser. *Cf. Block,* 590 F.2d at 541 (mother's consent properly extended to son's bedroom but did not justify search of foot locker exclusively used by him).

The Supreme Court has made clear that "[t]he touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno,* 500 U.S. 248, 250, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991) (citation omitted); *id.* at 251, 111 S.Ct. 1801 (holding that it was objectively reasonable for the police to "consider a suspect's general consent to a search of his car to include consent to examine a paper bag lying on the floor of the car."). The Court, in *Illinois v. Rodriguez,* 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), decided subsequent to *Matlock,* held that a search based on consent of a third party is reasonable and valid if the police officer reasonably believed the third party had authority to consent, even if the facts developed later revealed that the third party did not have authority to act. *Rodriguez,* 497 U.S. at 188, 110 S.Ct. 2793.

We have already stated our view that the facts developed revealed actual authority, but as an alternative basis for our decision in this case, we hold that it was reasonable for the police officers to believe that appellee's father had authority (*i.e.*, apparent authority) to consent to the search.

For the reasons set forth above, we conclude that the circuit court erred in granting appellee's motion to suppress.

**CIRCUIT COURT'S RULING ON APPELLEE'S MOTION TO SUPPRESS REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**