**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gene M. EREKSON, Defendant–
Appellant.**

No. 94–4228.

United States Court of Appeals,
Tenth Circuit.

Nov. 21, 1995.

**1154**

Robert E. Lindsay (Alan Hechtkopf and Jeffrey A. Breinholt with him on the brief), Tax Division, Department of Justice, Washington, D.C., for appellee.

Edwin F. Guyon, Salt Lake City, Utah, for appellant.

Before SEYMOUR, Chief Judge, BARRETT, Senior Circuit Judge, and KERN *, District Judge.

_____

* The Honorable Terry C. Kern, United States District Judge for the Northern District of Okla-

BARRETT, Senior Circuit Judge.

Gene M. Erekson (Erekson) appeals from his conviction and sentence following a jury trial on charges of conspiracy to defraud the Internal Revenue Service (IRS), in violation of 18 U.S.C. § 371, and presenting a false social security number, in violation of 42 U.S.C. § 408(a)(7)(B).

### Facts

In the fall of 1991, IRS Special Agent John Howard (Howard) was involved in a criminal investigation of possible tax offenses by Michael K. Jensen (Jensen). On September 25, 1991, Howard contacted Erekson and requested a meeting to discuss Jensen's business affairs. Erekson agreed to meet with Howard at the IRS office that afternoon.

At the meeting, Howard identified himself as an IRS Special Agent and displayed his credentials showing he was with the Criminal Investigation Division. During the interview, Howard asked Erekson what types of services he had performed for Jensen, whether he had been paid, in what form had he been paid, and how much. The questions were designed to determine whether Jensen was entitled to business expense deductions to offset any income he had earned through his tape duplicating business, Sound Concepts.

In addition, Howard asked Erekson about several bank accounts for which Howard had obtained the bank records. The bank records showed that checks payable to Jensen or Sound Concepts were deposited into these bank accounts and that Erekson had signatory authority over these accounts. Erekson denied having any bank accounts which Jensen used.

On April 7, 1993, Erekson was indicted on one count of conspiring to defraud the IRS, in violation of 18 U.S.C. § 371, and one count of presenting a false social security number, in violation of 42 U.S.C. 408(a)(7)(B). The conspiracy count charged several overt acts, including:

homa, sitting by designation.

24. On or about September 25, 1991, during an interview conducted by a representative of the Internal Revenue Service, GENE M. EREKSON falsely denied that he had checking or savings account [sic] into which MICHAEL K. JENSEN deposited money.

(R., Vol. I at 6).

On June 16, 1994, Erekson filed a Motion to Suppress his interview statements. The motion was referred to United States Magistrate Judge Samuel Alba, who held an evidentiary hearing on the morning of July 15, 1994. The Magistrate presented his Report and Recommendation to the district court at a hearing that afternoon:

I heard the testimony of Mr. Erekson, the defendant, and Special Agent Howard of the Internal Revenue Service. Based on the testimony that was presented, I have made the following findings of fact. I have also relied on [sic] making these finding on other documents that were submitted, exhibits that were introduced and memoranda that were submitted by both the defendant and by the government in response to the motion to suppress. I've also listened to the arguments of counsel.

\* \* \* \* \* \*

3. Erekson voluntarily appeared at the meeting at Howard's office. Howard introduced himself to Erekson as John Howard, special agent, and showed Erekson his credentials.

4. The meeting took place in an office with Erekson, Howard and Revenue Agent Hayes present. The parties were all seated in the office. Erekson brought a tape recorder with him to the interview, which he held in his hand and on his lap. Howard noticed the recorder and at that point decided that he would also tape the interview. Howard placed a tape recording device on the table.

5. During the course of the interview, Howard did not press Erekson to answer any questions that he did not want to answer. Howard made no threats or intimidating gestures to Erekson. Erekson was free to leave at any time during the interview. Howard's revolver was not displayed in any way. Erekson did not appear distressed at any point during the interview.

\* \* \* \* \* \*

8. At no time during the interview did Howard consider Erekson to be the subject of a criminal investigation. Howard did not deceive Erekson regarding the nature of the interview on September 25, 1991. Additionally, Howard did not deceive Erekson regarding the nature of the criminal investigation concerning Jensen. Erekson did not become the focus or target of an IRS criminal investigation until approximately December 12th, 1991, where, during a meeting with Howard and his superiors to discuss the Jensen case, it was determined that the investigation should be expanded to include Erekson. On or about December 19th, 1991, a criminal case was officially opened concerning Erekson.

9. Once Erekson was identified as the focus of a criminal investigation, there was no further contact with Erekson warranting either Miranda warnings or such other warnings required by IRS regulations.

For an analysis of this case, I have the following: In viewing the circumstances surrounding Howard's interview of Erekson on September 25th, '91, there is no evidence to suggest that Erekson was either taken into custody or otherwise deprived of his freedom in any significant way. This was a noncustodial interview which did not require Erekson be advised of his Miranda rights. [citations omitted]

For the second portion of the analysis based on the evidence presented in Howard's testimony concerning the purpose of the interview, the representations made to Erekson concerning the nature of the interview and the nature of the criminal investigation of Jensen, I find that defendants have failed to establish by clear and convincing evidence that Howard affirmatively and intentionally misled Erekson or that Erekson was in any way the subject of fraud, deceit or trickery on the part of Howard. [citations omitted]

Therefore, based on this, it is my recommendation that defendants' motion to suppress be denied.

(R., Vol. III at 3–7).

The district court adopted the Magistrate's Report and Recommendation in full. (R., Vol. VIII at 167).

At trial, the transcript of the September 25, 1991, interview was authenticated and admitted in evidence. (R., Vol. VI at 45–46). Erekson testified that he made the statements attributed to him in the interview transcript and that they were accurate. (R., Vol. VIII at 118).

On July 22, 1994, Erekson was convicted on both counts. He was sentenced to a term of 12 months imprisonment, to be served as six months of imprisonment followed by six months of supervised release, plus three years of supervised release.

*Issues*

On appeal, Erekson contends that the district court erred in denying his motion to suppress the statements he made during the September 25, 1991, interview. Erekson argues that his Fifth Amendment rights were violated because he was not given a *Miranda* warning; the statements he made were not voluntary; and the statements obtained during the interview constituted an illegal search in violation of the Fourth Amendment because any consent obtained from him was obtained through deception.

■ In reviewing the denial of a motion to suppress, we accept the district court's findings of fact unless they are clearly erroneous, viewing the evidence in the light most favorable to the district court's findings. *United States v. Higgins*, 2 F.3d 1094, 1096 (10th Cir.1993); *United States v. Gonzalez–Acosta*, 989 F.2d 384, 387 (10th Cir.1993).

*Discussion*

a.

■ Erekson contends that his Fifth Amendment rights were violated because he was not given a *Miranda* warning. He asserts that a *Miranda* warning was required because the IRS agents knew or should have known that their questions would produce incriminating responses and because of the close relationship between the questions and the criminal acts charged.

■ It is well established that under *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966), in order to protect the privilege against self-incrimination, law enforcement officers must administer prophylactic warnings regarding the privilege to any suspect subjected to "custodial interrogation." [1] The Court explained that such interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* If the warnings are not administered, the prosecution may not use statements made by the suspect, "whether exculpatory or inculpatory." *Id.*

In *Mathis v. United States*, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968), the Court applied the *Miranda* requirements to interviews with IRS agents concerning tax liability, when the suspect is in custody. The Court held that "[t]ax investigations, which frequently lead to criminal prosecution, are not immune from the *Miranda* warning requirement to be given to a person in custody, whether or not such custody is in connection with the case under investigation." *Id.*

In *Beckwith v. United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976), the Court reiterated that the requirements of *Miranda* are applicable only when the suspect is "in custody." In *Beckwith*, the defendant was questioned by IRS agents at his home. *Id.*, 425 U.S. at 342, 96 S.Ct. at 1614. The agents identified themselves and informed the defendant that they were attached to the Intelligence Division where one of their functions was to investigate the possibility of tax fraud. *Id.* at 343, 96 S.Ct. at 1614. They specifically informed the defendant that they were as-

---

1. Under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), before any custodial interrogation, a defendant must be warned that he has the right to remain silent, that any statement he does make may be used as evidence against him, that he has the right to the presence of an attorney, and that if he cannot afford an attorney, one will be provided for him.

signed to investigate *his* federal tax liability for the years 1966 through 1971. *Id.* The Court held that statements made to IRS agents during the course of a *noncustodial interview* in a criminal tax investigation were admissible against the defendant in the ensuing criminal tax fraud prosecution even though when he was interviewed, the "focus" of the investigation may have been on the defendant. *Id.* at 347, 96 S.Ct. at 1616 (emphasis added).

Therefore, in order to have triggered the *Miranda* warning requirements, Erekson must have been "in custody" at the time of the September 25, 1991, interview. *See Higgins*, 2 F.3d at 1096 (where defendant conceded that a custodial encounter had not occurred, *Miranda* and its progeny did not apply and no constitutional violation occurred). The district court found that the interview was noncustodial and we are satisfied that these findings of fact are not clearly erroneous. Erekson came to the interview voluntarily and was free to leave at any time. No force or threat of force was used to compel Erekson's attendance at the interview or to keep him there once he had arrived. Erekson was permitted to tape record the interview without any objection from Howard. Erekson knew that he was not the "focus" of the interview and that he was not a suspect in any criminal investigations at the time of the interview. Under the circumstances of this interview, a reasonable person would believe he was free to leave. In fact, Erekson did freely leave the office when the interview was over.

**b.**

■ Even though Erekson's *Miranda* rights were not violated, his statements would nevertheless be inadmissible if they were made involuntarily. *See United States v. Chalan*, 812 F.2d 1302, 1307 (10th Cir. 1987). When determining the admissibility of a defendant's statements, voluntariness depends upon an assessment of "the totality of all the surrounding circumstances," including "both the characteristics of the defendant and the details of the interrogation." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 2046, 36 L.Ed.2d 854 (1973). When a defendant claims that his statements to investigators were involuntary and thus improperly admitted at trial "it is the duty of an appellate court ... 'to examine the entire record and make an independent determination of the ultimate issue of voluntariness.'" *Beckwith*, 425 U.S. at 348, 96 S.Ct. at 1617 (quoting *Davis v. North Carolina*, 384 U.S. 737, 741–42, 86 S.Ct. 1761, 1764–65, 16 L.Ed.2d 895 (1966)); *Chalan*, 812 F.2d at 1307.

We conclude, based upon our independent evaluation of the record and with appropriate deference to the district court's findings of fact, that Erekson's September 25, 1991, statements were voluntary. Several key facts lead us to this conclusion. First, Erekson was not forced or pressured to answer any questions he did not wish to answer. Erekson specifically declined to answer six questions stating, "I decline to answer that question on the grounds that it might tend to incriminate me;" Howard merely moved on to his next question without comment. (Brief for Defendant/Appellant, Exhibit B at 4–8). Second, the environment in which the interview took place was not coercive. There were no threats or intimidating gestures made to Erekson and Howard did not display his revolver in any manner. Third, the twenty minute interview was not excessively long. Finally, Erekson was not unusually susceptible to coercion because of his age, lack of education or intelligence. In sum, we agree with the district court that Erekson's September 25, 1991, statements were voluntarily and freely given.

**c.**

■ Erekson argues that the statements obtained from him during the September 25, 1991, interview constituted an illegal search in violation of the Fourth Amendment because any consent obtained from him was obtained through deception. Although presented as an alleged Fourth Amendment violation, our review of the record reveals that Erekson's statements should be properly analyzed under a Fifth Amendment standard of conformity with *Miranda* and voluntariness.

■ Although we have held that Erekson's *Miranda* rights were not violated and that

his statements were freely and voluntarily given, his statements may be "involuntary" and therefore inadmissible if they were induced by deceit or misrepresentations of the IRS agents.

In order to prevail on this claim, a defendant

must produce clear and convincing evidence that the agents affirmatively mislead him as to the true nature of their investigation. Defendant must also prove that the misinformation was material in his decision to speak with the agents. Simple failure to inform defendant that he was the subject of the investigation, or that the investigation was criminal in nature, does not amount to affirmative deceit unless defendant inquired about the nature of the investigation and the agents' failure to respond was intended to mislead.

*United States v. Serlin*, 707 F.2d 953, 956 (7th Cir.1983) (internal citations omitted).

Erekson's claim fails under this standard. The record indicates that Howard truthfully responded to Erekson's inquiry into the nature of the investigation. According to the transcript of the interview, Howard responded to Erekson's inquiry that Erekson was not the focus of the investigation at that time. In fact, the record reflects that Erekson did not become a focus of the investigation until two months after the interview and Erekson has produced no evidence to the contrary.

Since a true statement cannot be equated with affirmative deceit, Erekson failed to produce clear and convincing evidence of affirmative governmental deception. *See Serlin*, 707 F.2d at 957 (citing *United States v. Mapp*, 561 F.2d 685, 689 (7th Cir.1977)). Therefore, his statements were voluntary and admissible.

**AFFIRMED.**