UNITED STATES of America, Plaintiff,

v.

Mesa RITH, Defendant.

No. 96–CR–36 W.

United States District Court,
D. Utah,
Central Division.

Feb. 4, 1997.

Leisha M. Lee–Dixon, Assistant United States Attorney, Salt Lake City, UT, for Plaintiff.

Ronald Jorgensen, Sandy, UT, for Defendant.

### MEMORANDUM DECISION AND ORDER AFFIRMING IN PART AND REVERSING IN PART REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

WINDER, Chief Judge.

This matter is before the court pursuant to the government's objections to the magistrate judge's November 14, 1996 Report and Recommendation on Defendant's Omnibus Motion. The defendant, Mesa Rith, was indicted on February 21, 1996, and charged with unlawful possession of an unregistered sawed-off shotgun in violation of 26 U.S.C. § 5861(d). On April 4, 1996, Defendant filed a motion asking the court to: (1) dismiss the indictment pursuant to the Speedy Trial Act, and Defendant's right to due process; (2) strike Defendant's alleged aliases from the indictment; (3) suppress evidence obtained

from the search of Defendant's bedroom; and (4) suppress statements made by Defendant.

A hearing was conducted before Magistrate Judge Alba on April 29, 1996. Following the hearing and after consideration of supplemental memoranda submitted by both parties, the magistrate judge issued a Report and Recommendation finding: (1) that Defendant's motion to dismiss the indictment should be denied because there was no violation of the Speedy Trial Act, and Defendant failed to establish that the registration of the sawed-off shotgun was a legal impossibility; (2) that Defendant's motion to strike the alleged aliases should be granted because there is no clear and distinct link between the aliases included in the indictment and the crime charged; (3) that Defendant's motion to suppress the sawed-off shotgun found during a warrantless search of Defendant's bedroom should be granted because the search violated Defendant's Fourth Amendment rights; and (4) that certain statements made by Defendant should be suppressed because they were the result of an illegal search, and because they were made either involuntarily or before *Miranda* warnings were rendered.

On November 22, 1996, the government objected to the magistrate's findings regarding the suppression of evidence and statements. A hearing was conducted before this court on December 30, 1996. The United States was represented by Leshia M. Lee–Dixon. The defendant, Mesa Rith, was present and represented by L. Ronald Jorgensen.

This court, now having made a de novo review of all matters objected to and, in fact, having reviewed the entire record before it, finds that the magistrate's Report and Recommendation would improperly suppress evidence and statements which were lawfully obtained. Accordingly, this court affirms and adopts the magistrate judge's Report and Recommendation in part, as to issues regarding the Speedy Trial Act, due process, and aliases; however, the court rejects the magistrate judge's Report and Recommendation as to the issues relating to suppression of evidence and statements.

## I. BACKGROUND

The following summary of facts is gathered from the transcript of the hearing on Defendant's Omnibus Motion held before the magistrate judge on April 29, 1996.

On November 20, 1995, at approximately 3:15 p.m., the West Valley Police Department dispatched Officer Mikkel Roe to a residence in West Valley City. Dispatch informed Officer Roe that some parents were concerned regarding guns which had been brought into their home by their son. The parents suspected that the guns were stolen and asked that the serial numbers be read and checked.

Officer Roe proceeded to the designated address (apparently the home of friends of Defendant's parents) where he was met by Defendant's father and stepmother. Defendant's father told Officer Roe that he and his wife had seen Defendant bring guns into their house. Defendant's father stated that he did not allow guns in their home. He also said that he had seen Defendant conceal one of the guns in a garbage can. He asked that the police go to his home and determine if these guns were stolen. Defendant's father told the police that he had suspected for a few weeks that his son was a gang member. Defendant's father did not want to accompany the police to his home because he was concerned that his son would become angry at the situation.

Officer Roe called dispatch and asked that Detective Chen, the gang task force officer for the West Valley Police Department, be sent to the scene. Detective Chen arrived and Defendant's father again gave his permission for the police to go into his home to find the guns. Detective Chen asked Defendant's father if he could have a key in case the door was locked or in case there was no one home, or if Defendant refused to let the police in. Defendant's father gave Detective Chen a key to the house. Defendant's father also told the officers that Defendant was eighteen years-old and that Defendant was not paying any rent.

Detective Chen and Officer Roe, now joined by Officer Johnson of the West Valley Police Department, proceeded to the Rith residence a few blocks away. When they arrived, Defendant was on the front porch

talking with two Midvale detectives who were coincidentally investigating a Midvale homicide.

Detective Chen asked Defendant if the officers could go inside the home to speak with him. Defendant responded that he did not want the officers to come inside the house. Defendant asked for a search warrant. Detective Chen then informed Defendant that the police had permission to enter from Defendant's parents as well as the keys to the house. Defendant did not resist the officers' entry further.

The officers entered the house and found Defendant's two younger brothers downstairs. The officers brought them to the upstairs front living room where they watched TV. Defendant was asked to sit down at the kitchen table because Detective Chen wanted to speak with him. At that point, Detective Chen told Defendant that they "knew that he had brought some guns into the house, and again stated that [they] had permission to search the house for those guns and requested that [Defendant] tell [them] where the guns were." Transcript, at 18 (testimony of Officer Roe). Defendant said "he only had one gun. It was downstairs in his bedroom under the mattress." *Id.* Defendant explained to the police which bedroom the gun was in.

Detective Chen, Officer Roe, and one of the Midvale detectives went downstairs and found a loaded twelve-gauge sawed-off shotgun underneath the mattress in Defendant's bedroom. They also found a BB gun inside an open closet. Additionally, the officers found a .22 caliber rifle outside in the garbage can. Both the shotgun and the .22 matched the description of the weapons Defendant's father had given to the police when he asked them to do the search. The police also found a checkbook in Defendant's bedroom which turned out to be stolen. Defendant admitted that he knew the guns and checkbook were stolen and that he had obtained them from a person named Poken.

Officer Roe advised Defendant of his *Miranda* rights. Defendant again stated where he got the guns and that he knew they were stolen. Defendant was arrested, handcuffed, and charged with possession of stolen property and illegal weapons. The officers were in the house for approximately forty-five minutes to one hour.

## II. ANALYSIS

Defendant argues that the search violated his rights under the Fourth Amendment to the United States Constitution. He claims that his parents did not have authority to consent to the search which encompassed his bedroom, and that any earlier permission which may have been given by the parents was expressly revoked by Defendant's later refusal to consent to the search. Defendant also asks the court to suppress any statements he made involuntarily or prior to being advised of his rights in accordance with *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

### A. Third–Party Consent to Search

■ The Fourth Amendment to the United States Constitution protects citizens against unreasonable searches by law enforcement officers. A warrantless search is per se unreasonable unless it falls within one of the courts' carefully defined exceptions. One of these exceptions exists when "permission to search [is] obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). Common authority may be either actual or apparent. *Illinois v. Rodriguez,* 497 U.S. 177, 185–89, 110 S.Ct. 2793, 2799–2802, 111 L.Ed.2d 148 (1990). The burden of proof is on the government to show by a preponderance of the evidence that the consenter had the authority to authorize the search. *United States v. Iribe,* 11 F.3d 1553, 1556 (10th Cir.1993).

■ The authority of a third person to consent to a search "stems from a practical understanding of the way in which the parties to a given relationship have access to and share certain property." *United States v. McAlpine,* 919 F.2d 1461, 1463 (10th Cir. 1990). Where such common authority exists, "the person whose property is searched is unjustified in claiming an expectation of pri-

vacy in the property because that person cannot reasonably believe that the joint user will not, under certain circumstances, allow a search in her own right." *Id.* This proposition is grounded in the reasoning that a joint occupant assumes the risk that another may give consent for police to search, even over the former's objections. *United States v. Garcia,* 861 F.Supp. 996, (D.Kan.1994), *aff'd,* 69 F.3d 549 (10th Cir.1995). "[T]he relevant analysis in third-party consent cases focuses on the relationship between the consenter and the property searched, not the relationship between the consenter and the defendant." *United States v. McAlpine,* 919 F.2d 1461, 1464 (10th Cir.1990). "While the character of the relationship between the consenter and the defendant may bear on the nexus between the consenter and the property, it is not dispositive of the issue of effective consent." *Id.*

In *United States v. Matlock,* the Court explained that common authority "rests ... on mutual use of the property by persons generally having joint access or control for most purposes." 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7. Some courts have taken this to mean that authority to consent to search can exist only if the third-party has access to, *and,* in fact, actually uses the property which is the subject of the search. *See United States v. Whitfield,* 939 F.2d 1071, 1075 (D.C.Cir.1991) (finding consent invalid because government did not show that consenting mother used defendant son's bedroom even if she had access); *United States v. Salinas–Cano,* 959 F.2d 861, 864 (10th Cir.1992) (finding defendant's girlfriend had no authority to consent to search of defendant's suitcase in her apartment because, although she had access, she did not use the suitcase). However, other courts have found that joint access by a co-occupant is enough without requiring the government to show that the consenter actually used the property which was the object of the search. *See United States v. Iribe,* 11 F.3d 1553, 1556 (10th Cir.1993) (finding defendant's niece had

authority consent to search because the niece "clearly had joint access to the house inasmuch as she was living with [defendant] at [the house which was the subject of the search]"); *United States v. Hall,* 979 F.2d 77, 78–79 (6th Cir.1992) (finding common authority where consenting homeowner had access to defendant's rental room, but never entered it when defendant was not present), *cert. denied,* 507 U.S. 947, 113 S.Ct. 1357, 122 L.Ed.2d 736 (1993); *United States v. Peterson,* 524 F.2d 167, 180–81 (4th Cir.1975) (mother's access and control over premises gave authority to consent with no showing of use), *cert. denied,* 423 U.S. 1088, 96 S.Ct. 881, 47 L.Ed.2d 99 (1976); *State v. Washington,* 86 N.C.App. 235, 357 S.E.2d 419, 426 (1987) ("[A]ctual use is irrelevant where [defendant's mother] retained sufficient control over the premises that defendant assumed the risk that she might at some time exercise her right to enter upon and inspect the premises and permit others to do so."), *cert. denied,* 322 N.C. 485, 370 S.E.2d 235 (1988).

■ In the case now before this court, the government set forth uncontradicted evidence of the following facts determined by the police prior to the search: (1) Defendant was residing at his parents' home, (2) Defendant was paying no rent, (3) Defendant was eighteen-years-old, and (4) Defendant's father and stepmother manifested their authority over the premises by inviting the police to search their home for the purpose of finding and removing illegal weapons. These uncontroverted facts demonstrate that a sufficient relationship existed between Defendant's parents and their son's bedroom within the family home, so as to give the parents authority to consent to a search there. No evidence was introduced by Defendant to show an extraordinary expectation of privacy beyond what might reasonably be apparent under the circumstances. It was not necessary for the government to make a further, affirmative showing to rule out that possibility.[1] *See Commonwealth v. Gibbons,* 379

---

1. In his Report and Recommendation, the magistrate relied to a significant degree upon *United States v. Whitfield,* 939 F.2d 1071 (D.C.Cir.1991), in reaching the conclusion that Defendant's father had no authority, actual or apparent, to

consent to a search of his son's room. Report and Recommendation, at 24–26.

In *Whitfield,* the court held that the defendant's mother could not consent to a search of her 29 year-old son's bedroom because the law

Pa.Super. 285, 549 A.2d 1296, 1300–01 (1988) (finding mother had authority to consent to search of adult son's bedroom because defendant introduced no evidence diminishing his mother's dominion over the premises), *appeal denied,* 522 Pa. 601, 562 A.2d 825 (1989); *State v. Kunkel,* 406 N.W.2d 681, 682–84 (N.D.1987) (holding mother had sufficient authority to consent where mother owned home, and evidence was insufficient to establish landlord-tenant relationship); *State v. Worley,* 179 W.Va. 403, 410, 369 S.E.2d 706, 713 & n. 8 (father had authority to consent to search of bedroom within trailer used by son where no evidence was submitted that son took measures to limit father's authority), *cert. denied,* 488 U.S. 895, 109 S.Ct. 236, 102 L.Ed.2d 226 (1988).

■ Defendant also argues that the police did not have authority to search because the consent of his parents was negated by Defendant's subsequent objection. However, Defendant's refusal to consent to the search has no bearing on his expectation of privacy and his argument has been rejected by other courts which have addressed this issue. *See United States v. Morning,* 64 F.3d 531, 534–36 (9th Cir.1995) (finding valid consent by co-occupant even though defendant was present and had already refused to consent; also citing several other cases supporting this proposition), *cert. denied,* —— U.S. ——, 116 S.Ct. 1030, 134 L.Ed.2d 108 (1996); *United States v. Donlin,* 982 F.2d 31, 33 (1st Cir.

1992) (finding co-occupant's consent allowed officers to kick down apartment door after defendant inside had chained door, demanded a warrant, and otherwise refused consent to entry); *see also State v. Kunkel,* 406 N.W.2d 681, 682–84 (N.D.1987) (approving of officer's entry into defendant's bedroom where mother consented notwithstanding defendant's demand that officers leave); *State v. Washington,* 86 N.C.App. 235, 357 S.E.2d 419, 427 (1987) ("[E]ven if defendant had objected to the search, we question whether defendant's presence and objection would vitiate his mother's consent ... that did not depend on his authority in the first place."), *cert. denied,* 322 N.C. 485, 370 S.E.2d 235 (1988).

■ This court recognizes that in these cases, both the defendant and the consenting third-party were present. However, under the facts of this case, it is of no consequence that the parents were not present at the house when the defendant initially refused to cooperate with the search. As the court in *Morning* explained, "the primary factor is the defendant's reasonable expectations under the circumstances. Those expectations must include the risk that a co-occupant will allow someone to enter, even if the defendant does not approve of the entry." 64 F.3d at 536; *see also United States v. Garcia,* 861 F.Supp. 996, 1004–05 (D.Kan.1994) (holding officers not precluded from going to defen-

enforcement officers did not establish that the mother actually used the bedroom notwithstanding the court's assumption that she had access to it. *Id.* at 1074–75 (citing *Matlock,* 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7). The court also found, as did the magistrate judge in Rith's case, that the government did not meet its burden of proof because it did not demonstrate the absence of any extraordinary expectation of privacy that may have been held by the defendant. *Id.*

This court disagrees with that interpretation of the law and its application to Defendant Rith's case. Given the information obtained by the police from Defendant's father, the officers were reasonable in their belief that the consent was valid. It should not have been necessary for them to rule out every possible arrangement that could have existed between Defendant and his parents. Moreover, it was not necessary for the government to show, for example, that Defendant's father used Defendant's room to store his possessions or watch television. *See Whitfield,* 939 F.2d at 1074 (listing examples of activity

police must establish to show consenter's use of premises, thus, authority to search there).

"[T]o some extent the police must be allowed to rely upon the word of the householder and general appearances." *United States v. DiPrima,* 472 F.2d 550, 552 (1st Cir.1973); *cf. State v. Russell,* 92 N.C.App. 639, 376 S.E.2d 458, 462–63 (1989) (upholding state statutory provision which permitted consent from "a person who by ownership or otherwise is reasonably apparently entitled to ... consent to a search," and validating search of house and defendant's bedroom where police determined mother owned house and defendant was not paying rent).

Contrary to the questionable guidance provided by *Whitfield,* under the circumstances in Defendant Rith's case, the police were correct in relying on general appearances and using their common sense in determining that Defendant's parents had authority to consent to a search of the entire premises absent some other facts indicating an extraordinary expectation of privacy.

dant's residence and attempting to obtain consent to search from other occupants even though defendant had already refused permission to search there), *aff'd*, 69 F.3d 549 (10th Cir.1996). Defendant's pre-existing expectation of privacy was not affected by the fact that his parents chose not to be on the scene when the police confronted their son.

Accordingly, that portion of the magistrate's Report and Recommendation which would suppress evidence obtained pursuant to the search of the Rith home, including Defendant's bedroom, is hereby rejected. This court finds that all of the weapons, the ammunition, and the stolen checkbook were lawfully obtained and should not be excluded from evidence at trial.

### B. Admissibility of Pre–*Miranda* Statements

Defendant next contends that any statements he made prior to being advised of his constitutional rights are inadmissible pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The government contends that the statements are admissible because they were made voluntarily and prior to the point Defendant was taken into custody.[2]

Any statements made by a defendant, which are the product of police threats or overreaching, are involuntary and inadmissible as a violation of the Fifth Amendment. *United States v. Robertson*, 19 F.3d 1318, 1320–21 (10th Cir.), *cert. denied*, 513 U.S. 906, 115 S.Ct. 271, 130 L.Ed.2d 189 (1994); *United States v. Short*, 947 F.2d 1445, 1449 (10th Cir.1991). Moreover, under the Supreme Court's *Miranda* rule, "law enforcement officers must administer prophylactic warnings regarding the privilege [against self-incrimination] to any person subjected to 'custodial interrogation.'" *United States v. Erekson*, 70 F.3d 1153, 1156 (10th Cir.1995)

(citing *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612). "Statements elicited in noncompliance with this rule may not be admitted for certain purposes in a criminal trial." *Stansbury v. California*, 511 U.S. 318, 322, 114 S.Ct. 1526, 1528, 128 L.Ed.2d 293 (1994) (per curiam).

"In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but 'the ultimate inquiry is simply whether there [was] a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest.'" *Id.* (quoting *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983)). The question centers on the objective circumstances, rather than the subjective views of the defendant or the police. *Stansbury*, 511 U.S. at 323, 114 S.Ct. at 1529.

■■■ The totality of the circumstances in this case indicates that Defendant was not in custody until he was confronted by the police with the illegal weapon. At that point, the reasonable person in Defendant's situation would believe that he was no longer free to leave, and that any attempt to depart the premises would have been prevented, perhaps by force. Prior to that time, however, there is no evidence that the police drew their weapons, handcuffed Defendant, or otherwise restrained him by use of force or a demonstrated threat of force. Defendant was not significantly deprived of his freedom of movement to a degree associated with formal arrest.

■■■ The presence of five law enforcement officers and accusatory nature of the questioning do not compel a finding that Defendant was in custody for purposes of *Miranda*. "[A] noncustodial situation is not converted to one in which *Miranda* applies simply because ... the questioning took place in a 'coercive environment.'" *Oregon*

---

**2.** This court notes that, according to 18 U.S.C. § 3501, statements need only be voluntary to be admissible notwithstanding *Miranda* and its progeny. 18 U.S.C. § 3501(a) ("[A] confession ... shall be admissible in evidence if it is voluntarily given...."); *see also United States v. Fountain*, 776 F.2d 878, 886 (10th Cir.1985) ("[V]oluntariness is the sole constitutional requisite governing the admission of a confession in

evidence."). Because the government did not raise this argument in its suppression motion, this court reluctantly declines to do so as well. *But see Davis v. United States*, 512 U.S. 452, 463–64, 114 S.Ct. 2350, 2357–58, 129 L.Ed.2d 362 (1994) (Scalia, J., concurring) (questioning government's refusal to invoke § 3501 as well as Court's avoidance of the issue under the guise of sound prudential practice).

*v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977) (per curiam). Indeed, "[a]ny interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime." *Id.* However, after the officers found the sawed-off shotgun in Defendant's bedroom and returned to ask questions about it, a reasonable person would believe that the functional equivalent of arrest had occurred.

Accordingly, that portion of the magistrate's Report and Recommendation which would suppress statements made by Defendant, prior to the time he was confronted with the illegal weapon, is hereby rejected. However, this court affirms the magistrate's recommendation insofar as it would suppress statements made by Defendant after he was confronted with the illegal weapon, and thus in custody without the benefit of *Miranda* warnings.

### C. Admissibility of Post–*Miranda* Statements

 Defendant also argues that the statements he made after being advised of his rights pursuant to *Miranda* were involuntarily. The magistrate found that the coercive and custodial nature of the pre–*Miranda* questioning, and its temporal proximity to the post–*Miranda* questioning, so undermined the voluntariness of Defendant's post–*Miranda* statements that those statements were rendered inadmissible. Report and Recommendation, at 37–41 (citing *United States v. Perdue*, 8 F.3d 1455 (10th Cir.1993)). This court disagrees.

 The question of "voluntariness depends upon an assessment of 'the totality of all the surrounding circumstances,' including 'both the characteristics of the defendant and the details of the interrogation.' " *Erekson*, 70 F.3d at 1157; *United States v. Short*, 947 F.2d 1445, 1449 (10th Cir.1991) (listing various factors to be considered in determining whether confession is coerced), *cert. denied*, 503 U.S. 989, 112 S.Ct. 1680, 118 L.Ed.2d 397 (1992).

This court finds that all of Defendant's statements; those made both before and after *Miranda* warnings; were voluntarily. Although this court has found that the interrogation became custodial when Defendant was confronted with the illegal weapon, Defendant was never threatened or physically punished in any way. The length of time involved, forty-five minutes to an hour, suggests no extraordinary deprivation. The police were there, as Defendant was told, at the invitation of his parents. The episode took place in the familiar surroundings of the family home with Defendant's brothers watching television in another room. There is no evidence to suggest that Defendant was unusually susceptible to coercion because of his age, lack of education or intelligence. The defendant was not handcuffed and there were no guns drawn. Indeed, Defendant had already demonstrated his fortitude under the circumstances by refusing to consent to the police entry and search of the home. The evidence does not show that Defendant's will was so overborne, or his capacity for self-determination so critically impaired, that his statements were rendered involuntary. *See Short*, 947 F.2d at 1449 (finding statements made during drug raid voluntary where evidence indicated defendant was in pain from serious injuries suffered five days before, under influence of pain-killers, handcuffed, one ankle to the opposite wrist, Defendant's eleven-year-old daughter was handcuffed, and detention lasted for hours).

Accordingly, that portion of the magistrate's Report and Recommendation which would suppress statements made voluntarily by Defendant after he had received the appropriate *Miranda* warnings, is hereby rejected. Statements made by Defendant following his waiver of rights pursuant to *Miranda* are admissible at trial.

### D. Other Matters in the Report & Recommendation

The magistrate found no violation of the Speedy Trial Act, or Defendant's right to due process. However, the magistrate found that the aliases should be struck from the indictment because there was an insufficient

relationship between the alleged aliases and the crimes charged.

Therefore, having carefully reviewed the entire record of this case, as well as the magistrate's reasoning and findings, this court affirms and adopts the magistrate's Report and Recommendation as to those issues.

## CONCLUSION

Accordingly, for the foregoing reasons, and good cause appearing, IT IS HEREBY ORDERED that:

1. Magistrate Judge Alba's November 14, 1996 Report and Recommendation is AFFIRMED IN PART and REVERSED IN PART.

2. Defendant's Motion to Dismiss the Indictment is DENIED.

3. Defendant's Motion to Strike the alleged aliases is GRANTED.

4. Defendant's Motion to Suppress evidence obtained during the search of his residence is DENIED.

5. Defendant's Motion to Suppress statements is GRANTED only as to those statements made between the time he was first confronted by the police with the illegal weapon, and the time he was advised of his constitutional rights pursuant to *Miranda v. Arizona*.

6. Defendant's Motion to Suppress statements is DENIED as to statements made by Defendant in the time period prior to when he was first confronted with the illegal weapon, and the time period after he was advised of his constitutional rights pursuant to *Miranda v. Arizona*.